Commonwealth *v.* Shoemaker, Appellant.

204

[redacted]

Argued June 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

[redacted]

*Richard R. Fink,* Assistant Public Defender, for appellant.

*Alan M. Rubenstein,* Assistant District Attorney, with him *Stephen B. Harris,* First Assistant District Attorney, and *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., December 11, 1973:

Appellant contends that his sentence should be set aside because the pre-sentence report showed that he

had been arrested a number of times but did not state what disposition had been made of the arrests.[1]

On January 19, 1973, appellant was adjudged guilty of burglary and larceny of a window fan from a storage bin in an apartment building. The trial was before a judge sitting without a jury, and after the verdict was announced, appellant, through counsel, offered to stand for sentencing that day.[2] A rather lengthy interrogation by the court ensued. Appellant was asked about his prior arrests (the testimony regarding these has been summarized in the first footnote, *supra*), and also about his age and birthplace, marriage, children, employment, and military service. In the course of

---

[1] In stating the questions involved, appellant's brief states the first question to be as follows: "Is it error for the court to rely upon a record of 10 prior arrests not resulting in convictions, for sentencing purposes?" The pre-sentence report has been made part of the record before us. It includes an FBI arrest record listing fourteen arrests (including the arrest leading to the present case), the first on March 18, 1967, and the last on December 11, 1972. No disposition for any of these is shown. In responding to questions from the trial judge, appellant stated that the charges leading to his first arrest, on March 18, 1967 (for aggravated assault and battery), resulted from "a disagreement" with his wife; he answered "Yes, sir" to the judge's question, "Your wife decided to drop it?" The Deputy District Attorney stated to the judge that the charges leading to appellant's second arrest, on July 8, 1967 (for possession of dangerous drugs and conspiracy), were "nol. prossed", and that the charges leading to appellant's third arrest, on September 9, 1969 (for possession and use of narcotics), were "nol. prossed . . . because of the suppression hearing." Appellant was also arrested, apparently for a drug offense, on September 10, 1969, but he was not asked about that arrest, at least not specifically; he did say that he had had no convictions before the present case. The arrest leading to the present case was on April 16, 1971, and was appellant's fifth, according to the FBI arrest record. Thus, although the arrest record shows a number of arrests without disposition, the basis for the reference to "a record of 10 prior arrests not resulting in convictions" does not appear.

[2] No motions contesting the verdict were ever filed.

this interrogation appellant told the judge that he was then in jail on another burglary charge (he had been released on bail on the burglary charge for which the judge had just tried him). He also said that he had had problems with various drugs (barbiturates, marijuana, LSD, "speed", heroin, "the whole bit"). After appellant had referred to the apparent progress he was making in various prison programs ("a drug group . . . , and I'm in the dormitory"), the following took place.

"THE COURT: Do you have any recommendation, Mr. King [the Deputy District Attorney]? MR. KING: Your Honor, may I have one moment? THE COURT: Suppose we defer sentence? MR. KING: Your Honor, I want to consult with the prosecutor [the police officer]. He agrees with me. Although we have no definite recommendations as to time, we feel the defendant should not be permitted to be let out on the Street. THE COURT: Should not be allowed? MR. KING: Should not be set free on probation; that he should serve some sort of time. THE COURT: I am going to defer sentence and learn a little more about the man. I think there is probably a good bit more I can learn about him. I will have a pre-sentence investigation report done. It may help or it may hurt you, Mr. Shoemaker. DEFENDANT SHOEMAKER: Thank you, sir. THE COURT: It will help me, because I do not like what I see on this paper. But, I do want to see people involved in drugs, if that is the basis of your problem, to get squared away. I do not know if that is the case here; it is hard for me to tell. "

On March 7, 1973, appellant was returned to court for sentencing. He again testified as to his record[3] and

---

[3] Because of this testimony the record is not entirely clear. On the day of trial, as mentioned above, appellant had testified that he had been granted bail on the charge on which he had been tried but was in jail on another burglary charge. The order of commitment in the present case is consistent with that testimony. At the

described the apparent progress he was making in rehabilitation programs, such as drug therapy and completion of his high school credits. The judge then asked for sentencing recommendations: "Mr. FINK [defense counsel]: I would just submit, as Mr. Shoemaker's attorney, that the man has never been put on probation . . . I think he might be a good candidate for probation. He has set up a program in the event he's released. THE COURT: He is not a good candidate for probation. He is a threat to society. Have you seen this record? Mr. FINK: I have not."

The judge then produced part of the pre-sentence report: an FBI arrest record listing fourteen arrests, nine of which were after the arrest for the charges on which appellant was about to be sentenced. Defense counsel pointed out to the court that the report did not show "any dispositions on it"[4] whereupon the following occurred:

"THE COURT: My point is merely this; that Roger Shoemaker since 1967 has been engaged in various illegal activity, at least so the "rap" sheet indicates. And about the only time he is safe, is when he is not out on the street.

"I agree that drugs probably played a part in Mr. Shoemaker's activity; a large part, I suppose, in leading him to crime.

"Mr. Shoemaker, certainly get to the root of your problem; get as much help as you can on the drug situation.

---

hearing for sentence appellant testified that he had been in jail "on this charge" since December 27, 1972. It may be surmised that he was merely confused as to which charge his counsel was asking about.

4 The FBI report was the report referred to in note 1, *supra*. Counsel did not refer to or summarize the testimony that had been given immediately after the trial. As mentioned in note 1, *supra*, this testimony had explained that of the fourteen arrests listed, the first three (or four) had been disposed of without convictions.

"But just as one cannot lean on the fact that he was intoxicated when he committed a criminal act, neither can you lean on the fact you were under the influence of drugs, even though the need for money made you steal; and you probably stole many, many more times than shows on the sheet. We know that and so do you. Anybody who had been involved with heroin knows that.

"When you were before me in January, you told me that you were engaged at the time in using marijuana and then you turned to heroin and you were on five bags a day.

"You said you kicked it ten months ago. Now you are telling me you were on speed at the time of the burglary. Of course, your subsequent behavior suggests you had not kicked any habit at all.

"In any event, I have some sympathy for Roger Shoemaker the man, but not for Roger Shoemaker the criminal. He has to be taken off the streets, and I am going to send him to the state penitentiary for a term of not less than one year nor more than five years and hopefully when he is released on parole, as he shall be, he shall bear in mind he has some parole time to behave himself and to pay the costs."

In contending that this procedure was improper, appellant urges that the Act of March 31, 1860, as amended, December 22, 1965, P. L. 1187, §1, 19 P.S. §890, "be interpreted to require only records of arrests which have led to convictions to be submitted to the sentencing judge" (Appellant's Brief at 1). The portion of the statute to which appellant particularly refers is subsection (d) which provides: "(d) The report of the pre-sentence investigation shall conform to the standards established by the Pennsylvania Board of Probation and Parole and contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sen-

tence or in granting probation or in the correctional treatment of the defendant and such other information as may be required by the court."

Similar language, including the words "any prior criminal record," has been adopted by the *American Bar Association Project on Standards for Criminal Justice—Standards Relating to Probation* (Approved Draft, 1970), §2.3(ii)(B). The Commentary to the Standards states: "By [the words 'prior criminal record'] the Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction." *Id.* at 37.

These words of caution are well taken, for a sizeable percentage of arrests do not lead to convictions.[5] It does not follow from this fact, however, that the Act of March 31, 1860, as amended, *supra*, 19 P.S. §890, is to be interpreted as providing that a pre-sentence report may refer to an arrest only when it has resulted in a conviction.

---

[5] According to statistics cited in appellant's brief: Of the 1,340,073 adults and juveniles arrested in California in 1971, about 52% were released, dismissed, or acquitted. Nationally, in 1971, 82% of the adults arrested for serious crimes (murder, forcible rape, aggravated assault, larceny of $50 or more in value, and auto theft) were prosecuted; of these, 60% were found guilty as charged and 11% were found guilty of a lesser charge. In Philadelphia: in the Court of Common Pleas, in 1970, 43% of defendants were acquitted, in 1971, 37.9%, and in 1972, 40.9%; in the Municipal Court, in 1970, 50.6% were acquitted, in 1971, 49.8%, and in 1972, 42.6%.

As used in the statute, the words "prior criminal record" are ambiguous. It is not clear whether "prior" refers to that which occurred prior to the arrest for the crime for which the accused is being sentenced, prior to the trial for that crime, or prior to the day of sentencing. Nor is it clear whether "criminal record" refers to recorded convictions and acquittals only, or whether it also refers to arrests on charges that have not been tried, or that may have been tried but for which the disposition is not listed on the particular record before the court. This ambiguity, it will be observed, is reflected in the Commentary to the *ABA Standards, supra,* which implies that "prior criminal record" can be understood as referring to any arrest (whatever the outcome) occurring at any time up to the day of sentencing. The point of the Commentary is that the author of the pre-sentence report should make plain what sort of arrest he is citing.

Despite such ambiguity, a reading of the statute as a whole shows that it was intended to make as much information as possible available to the sentencing judge. This is particularly apparent from the phrase, "circumstances affecting his behavior as may be helpful in imposing sentence . . . ." It follows that the statute permits reference in a pre-sentence report to all arrests (whatever the outcome) occurring up to the day of sentencing, relying upon the author of the report to see to it that the reference is not ambiguous, and upon the sound judgment of the sentencing judge in making use of the reference.

Appellant contends, however, that nevertheless his sentence should be set aside because, he urges, the record reveals that the sentencing judge did not exercise sound judgment with respect to the record of appellant's prior arrests.

In examining this contention it is necessary to determine what use the sentencing judge made of the arrest

record. At first one is likely to conclude that the judge used it in deciding that appellant had tried to deceive him about prior arrests. Appellant had not mentioned, either when questioned immediately after the trial or just before sentence was imposed, how many times he had been arrested. He had told of three (or perhaps four) arrests prior to the arrest leading to his trial; and he had also referred to one later arrest for burglary, when explaining that the reason he was in jail at the time of trial was because he had been unable to raise bail on that arrest; he had not, however, said anything to suggest that he had been arrested fourteen times in all, and nine times after the arrest that led to his trial.

Testing a defendant's veracity may be an appropriate use of an arrest record. If a sentencing judge determines by referring to the record that the defendant, upon being questioned before sentence is imposed has lied about prior arrests, the judge may take that fact into account and perhaps impose a more severe sentence than if the defendant had told the truth. Here, however, it is not apparent that appellant did either lie or try to deceive the sentencing judge. Appellant was never asked about any arrests except about arrests preceding the arrest that led to his trial, and as to these he or defense counsel responded. In referring to a single later arrest for burglary, appellant was responding to a question about why he was in jail, not to a question about how many times he had been arrested. Furthermore, there is no statement of record by the sentencing judge that he did think appellant had lied or tried to deceive him about prior arrests.

The only statement the sentencing judge did make of record regarding the effect he gave the prior arrests is in his opinion in response to this appeal. There he says: "The sentencing judge was aware of the fact that there were probably no convictions upon certain ar-

rests. While it is believed that the sentence imposed would not have been different had the trial judge been unaware of the arrests unsupported by dispositions, his review of the criminal record in question was quite proper."

When this statement is read in light of the transcript of the sentencing proceeding, a considerable part of which has been quoted above, there can be no doubt that the sentencing judge not only took into account the record of prior arrests, but regarded it as showing criminal conduct. This is particularly shown by the judge's remarks, "That [the record of arrests] tells you who Roger Shoemaker is, right there; not what Roger Shoemaker tells you," and, ". . . you probably stole many, many more times than shows on the sheet. We know that and so do you."

This use of the arrest record was error. It ignored the danger, stated in the ABA *Standards, supra,* that "[a]rrests, short of an adjudication . . . can be extremely misleading." It further ignored the presumption of innocence, and amounted to basing a sentence not simply on evidence not before the court but on no evidence at all.[6] It does not follow, however, that appellant's sentence should be set aside.

The information used by a judge in imposing sentence need not necessarily meet the standards of admissible evidence at trial; however the due process clause does apply to the sentencing procedure. *Williams v. New York,* 337 U.S. 241 (1949) (resentencing denied). Thus resentencing has been ordered where the defendant was unrepresented at trial and the sentencing judge apparently placed great reliance on a report that was

---

[6] In passing it may be noted that the pre-sentence report—contrary to the ABA Standards, *supra*—only listed the arrests; so far as appears from the report, no effort was made to determine and to advise the court with respect to any dispositions.

in fact materially false. *Townsend v. Burke,* 334 U.S. 736 (1948) (emphasizing that had counsel been present, he might have been able to correct the judge's reading of the record). A similar result was reached in *United States ex rel. Jackson v. Myers,* 374 F. 2d 707 (3d Cir. 1967) (the judge misread the record and the defendant's counsel failed to correct the error, the sentence therefore being based on "materially inaccurate facts").

The farthest that any case has gone in ordering re-sentencing is *United States v. Tucker,* 404 U.S. 443 (1972). There the defendant's credibility was impeached through the use of prior convictions, obtained, as was later discovered, after trials at which he had not been represented by counsel. It was held that even though on the issue of guilt this was harmless error beyond a reasonable doubt (since there were four eyewitnesses to the crime), the sentence was "founded at least in part on misinformation of constitutional magnitude." *Id.* at 447.

The critical fact in each of these cases was that the record revealed the presence of misinformation. This is not such a case. Although the sentencing judge should not have inferred that the arrests showed crimes, perhaps nevertheless the inference was correct. It has at least not been shown to have been incorrect. Counsel for appellant must have understood that the judge was about to impose a sentence based in part on the inference that the arrests showed crimes; the judge's remarks made that plain. It was counsel's responsibility to offer whatever evidence he could to show that the inference was mistaken. If one or more of the arrests had been disposed of favorably to appellant, that could have been proved. Assuming that was impossible because appellant had not been tried on any of the arrests, at least that much could have been proved. As it was, all counsel did was to remark (what the judge could see for himself) that according to the FBI record, the

arrests were undisposed of. In this regard the following may be noted from *Williams v. New York, supra,* which affirmed a sentence of death based on information in the pre-sentence report after the jury had recommended only a life term: "The accuracy of the statements made by the judge as to appellant's background and past practices was not challenged by appellant or his counsel, nor was the judge asked to disregard any of them or to afford appellant a chance to refute or discredit any of them by cross-examination or otherwise." *(Dictum.) And cf. Commonwealth v. Rollins,* 224 Pa. Superior Ct. 467, 307 A. 2d 385 (1973).

In *Commonwealth v. Wrona,* 442 Pa. 201, 206, 275 A. 2d 78 (1971), it was said: "Whether a trial judge imposed a proper sentence on a criminal defendant does not present a pure question of law, unless the sentence exceeds the statutorily prescribed limits or is such as to be constitutionally impermissible. In the usual case, the problem presents a mixture of law and fact. Hence, our Superior Court has correctly ruled that the sentence imposed on a person convicted of crime lies with one exception (where the conviction is for first degree murder following a trial by jury) within the sole discretion of the trial court, and the sentence imposed will not be reviewed by an appellate court, unless it exceeds the statutorily prescribed limits or is so manifestly excessive as to constitute too severe a punishment." See *Commonwealth v. Bilinski,* 190 Pa. Superior Ct. 401, 154 A. 2d 322 (1959).

When this test is applied to the present case, it is apparent that the sentence cannot be disturbed. There was no violation of "statutorily prescribed limits". The maximum sentence might have been ten to twenty years, as compared to the sentence in fact imposed of one to five years; and, as has been discussed, there is no statutory limit with respect to the inclusion in a pre-sentence report of an arrest record. Nor was the sentence

"so manifestly excessive as to constitute too severe a punishment." Although it was error for the sentencing judge to infer criminal conduct from the arrest record, the error did not violate appellant's right to due process; and while the judge did impose a sentence that some might regard as "severe", defense counsel has not furnished us with a record warranting the conclusion that it was "too severe".

The judgment of sentence is affirmed.

SPAULDING, J., did not participate in the consideration or decision of this case.