134 N.J. Super. 21 (1975)
338 A.2d 202
FRANCIS STROINSKI, PLAINTIFF-APPELLANT,
v.
OFFICE OF THE PUBLIC DEFENDER, STANLEY C. VAN NESS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF PUBLIC DEFENDER AND HERBERT WACHSTEIN, INDIVIDUALLY AND IN HIS CAPACITY AS DEPUTY PUBLIC DEFENDER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1975.
Decided April 28, 1975.
*26 Before Judges CARTON, CRANE and KOLE.
Mr. Herbert O. Brock argued the cause for appellant (Camden Regional Legal Services, Inc., attorney; Mr. Allen S. Zeller and Mr. Wayne R. Bryant on the brief; Ms. Rita L. Bender, of counsel).
Mr. Michael S. Bokar, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. William C. Rindone, Jr., Deputy Attorney General, on the brief).
The opinion of the court was delivered by KOLE, J.A.D.
This action for declaratory judgment and injunctive relief involves the validity of that portion of the Public Defender Act, N.J.S.A. 2A:158A-17, mandating that a lien be filed against the present or after-acquired property of an indigent who is represented by the Public Defender where the value of the services rendered appears to exceed $150. The trial judge upheld the provision. We affirm.[1]
In 1969 plaintiff, qualifying for Public Defender assistance, was represented by an attorney from that office in connection with charges of breaking, entry and larceny. At the time he was given such assistance he signed a reimbursement agreement permitting the Public Defender (Defender) to place a lien against his property and agreeing to repay *27 the Defender for legal services at the rate of $5 a week. He was convicted and his convictions were affirmed on appeal.
The Defender sent plaintiff a notice of lien in the amount of $685 for legal services rendered at trial and thereafter sent him a similar notice in the amount of $957.57 for services rendered and the cost of the transcript on the appeals. No attempt has been made to execute on the liens.
In 1967 the New Jersey Legislature adopted the Public Defender Act, N.J.S.A. 2A:158A-1 et seq. The purpose of the act was to provide for the "realization of the constitutional guarantees of counsel in criminal cases for indigent defendants." N.J.S.A. 2A:158A-1. An "indigent defendant" was defined as someone charged with an indictable offense who does not have "the present financial ability" to retain an attorney and to provide the necessary expenses of representation. N.J.S.A. 2A:158A-2.[2] Eligibility for the services of the Defender is determined by the need of defendant adjudged by the Defender after an investigation of his financial status. N.J.S.A. 2A:158A-14; 2A:158A-15.
The statute provides for a reimbursement procedure.
N.J.S.A. 2A:158A-16 provides:
In all cases where it appears that the defendant has or reasonably expects to have means to meet some part, though not all, of the cost of the services rendered to him he shall be required to reimburse the office, either by a single payment or in installments, in such amounts as he can reasonably be expected to pay; but no default or failure in the making of any such payment shall in any wise affect or reduce the rendering of the services to him. [Emphasis supplied]
*28 N.J.S.A. 2A:158A-17, the provision here in controversy, states:
The reasonable value of the services rendered to a defendant pursuant to this act may in all cases be a lien on any and all property to which the defendant shall have or acquire an interest. The Public Defender shall effectuate such lien whenever the reasonable value of the services rendered to a defendant appears to exceed $150.00 and may effectuate such lien where the reasonable value of those services appears to be less than $150.00.
To effectuate such a lien, the Public Defender shall file a notice setting forth the services rendered to the defendant and the reasonable value thereof with the Clerk of the Superior Court. The filing of said notice with the Clerk of the Superior Court shall from the date thereof constitute a lien on said property for a period of 10 years, unless sooner discharged and except for such time limitations shall have the force and effect of a Judgment at Law. Within 10 days of the filing of the Notice of Lien, the Public Defender shall send by certified mail, or serve personally, a copy of such notice with a statement of the date of the filing thereof to or upon the defendant at his last known address. If the Public Defender shall fail to give notice, the lien shall be void.[3]
N.J.S.A. 2A:158A-18 orders the Clerk of the Superior Court to provide separate books for the recording of said liens, "properly indexed in the name of the judgment debtor." N.J.S.A. 2A:158A-19 provides that the Defender "shall do all things necessary and proper to collect all moneys due to the State by way of reimbursement for services rendered"; that he shall have all of the remedies "which may be had or taken for or upon the recovery of a judgment in a civil action," including the institution of court actions or proceedings for such purposes, and that in any such proceedings or action, defendant may contest the *29 value of the services rendered by the Defender. Pursuant to N.J.S.A. 2A:158A-20, the Defender is authorized to compromise and settle any claim for services "whenever the financial circumstances of said person are such that in the judgment of the Public Defender the best interest of the State will be served by such compromise and settlement."
The Public Defender Act was the Legislature's response to decisions of the United States Supreme Court and the New Jersey Supreme Court implementing the constitutional guarantee to an indigent defendant in a criminal case of the right to counsel and the related costs of criminal proceedings at public expense. That guarantee has been firmly established on the basis of equal protection and the Sixth Amendment's grant of the fundamental right to assistance of counsel in a criminal case, made applicable to the states by the Due Process Clause of the Fourteenth Amendment. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Horton, 34 N.J. 518, 534 (1961); State v. Rush, 46 N.J. 399 (1966); State v. Welch, 46 N.J. 57 (1965).
Plaintiff first contends that N.J.S.A. 2A:158A-17 constitutes an invalid encroachment by the Legislature upon the rule-making authority of the New Jersey Supreme Court. The argument is without merit.
This State has long been a leader in the matter of providing counsel for indigent defendants. See State v. Horton, supra, 34 N.J. at 522-523. The most significant New Jersey case, prior to the establishment of the Office of the Public Defender is State v. Rush, supra. There the court was faced with the question of whether counsel assigned to defend indigents charged with a crime other than murder was entitled to receive from the county or the State compensation for services and reimbursement of out-of-pocket expenses. Chief Justice Weintraub stated that while it was the continuing responsibility of the bar to defend such indigents, *30 the bar should not be required to continue to absorb the full cost thereof. The court found ample evidence of a legislative will that the cost of criminal prosecutions, including the services of appointed counsel, be paid by the county, rather than the State. It, however, delayed the effective date upon which the members of the bar would be relieved of the burden they were then bearing to serve without fee in nonmurder indigent criminal cases in order to give the Legislature an opportunity to decide whether the State's obligation to provide such indigents with counsel should be met by the then system of assignment in individual cases, or by a public defender, or some combination of both. 46 N.J. at 415.
The court also indicated that a court rule relating to out-of-pocket disbursements of such assigned counsel was not required in view of its opinion in State v. Horton, supra. What it stated in that connection applies equally to the matter of payment for services of such counsel. 46 N.J. at 415.
Thus, the matter of providing counsel for indigent defendants in criminal cases, including the allocation and method of payment of costs thereof, was expressly left by the Supreme Court to the Legislature. Under these circumstances it cannot be said that the subsequent enactment by the Legislature of the Public Defender Act in response to the court's invitation constitutes an invalid encroachment by it of the court's rule making power. In fact, in Rush, the court took pains to note "without exploring the subject at all" the question of whether the judiciary has the inherent power to order payment of counsel fees for indigent criminal defendants in the absence of statute. 46 N.J. at 413.
The situation here is not unlike that discussed by the court in Busik v. Levine, 63 N.J. 351, 367 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973), when it observed that although, arguably, evidence *31 is both procedural and substantive, nevertheless the rules of evidence were adopted cooperatively by the three branches of government.
The fact that the Supreme Court has general authority under its rule-making power to award and allocate counsel fees does not mean that in appropriate circumstances the Legislature, with that court's acquiescence, may not act in this area where a public interest or obligation is involved. See Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 493-496 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952). Cf. Busik v. Levine, supra, 63 N.J. at 372 and 373, n. 10; McMullen v. Maryland Cas. Co., 127 N.J. Super. 231, 237 (App. Div. 1974).
Additionally, it is not without significance in this respect that the Public Defender Act itself refers to the Defender's duty, in performing its services, to "adhere * * * to the standards * * * of performance established * * * by the Supreme Court of New Jersey in the execution of its duty to supervise the practice of law; and the office [of the Defender] shall furnish to such court materials and data as may be necessary to the measurement of the adequacy of the performance" under the act. N.J.S.A. 2A:158A-13. See also, N.J.S.A. 2A:158A-22 providing for the Defender to report annually to the Legislature, the Governor and the Supreme Court.[4]
The rules specifically recognize and refer to the Office of the Public Defender and in no wise indicate any disapproval or inapplicability of the reimbursement or lien provisions of the statute creating that office. See R. 1:13-2; 2:7-2, 3:4-2; 3:22-6; 3:27-1; 5:3-3(a). Indeed, the initial predecessor of these rules was R.R. 1:12-9, adopted June 30, 1967, following the enactment in that year of the Public Defender Act, which was to become effective July *32 1, 1967. The rules have been amended since 1967 without any endeavor to abrogate or nullify these provisions of the act. Such acquiescence by the court supports the conclusion that they do not encroach on its rule-making authority. See State in the Interest of Antini, Jr., 53 N.J. 488, 492 (1969).
In opinions subsequent to the statute our Supreme Court has further expressly recognized the Defender as the statutory counsel for adult indigents charged with indictable offenses and for indigent juvenile offenders in danger of commitment. See State in the Interest of Antini, Jr., supra, 53 N.J. at 495, stating that the "legislature has wisely provided a state system" for this purpose and that it must provide sufficient money to the Defender to function expeditiously. See also Rodriguez v. Rosenblatt, 58 N.J. 281, 285-296 (1971).
There is no substance to plaintiff's claim that there is a conflict between the provisions of the Public Defender Act here involved and the court rules. The rules relied on, concerning compensation of counsel and other costs involved in the defense of indigents, were not intended to cover the Public Defender's office or its duties or functions under the Public Defender Act. They either involve attorneys assigned by the court to indigents charged with nonindictable offenses who are constitutionally or otherwise entitled by law to counsel without cost under the old rotation system referred to in Rush, or the waiver of fees and costs in any indigent case irrespective of who represents him. See R. 1:13-2(a) (b); 2:7-1; 2:7-2; 3:4-2; 3:22-6; 3:27-2. See also Rodriguez v. Rosenblatt, supra; In re Adoption of a Child by M.W., 116 N.J. Super. 506, 513 (App. Div. 1971).
In view of what we have said it is plain that the Legislature has not invaded the jurisdiction of the Supreme Court rule-making power in enacting N.J.S.A. 2A:158A-17 or 2A:158A-16. Rather, the adoption of the entire statute, *33 including these provisions, was in response to suggestions by the court itself in a cooperative effort to meet the constitutional requirements relating to indigent defendants in criminal cases. There is no basis for concluding that the court rules in any wise preempt the area relating to reimbursement of the Defender for the expense of representing a defendant or the assertion of a lien therefor under the act.
Plaintiff argues that N.J.S.A. 2A:158A-17 unconstitutionally creates a "chilling effect" upon an indigent's right to counsel. We disagree.
The answer to this contention is to be found in Fuller v. Oregon, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). That case holds that as long as a statute authorizing recoupment of expenses incurred by the state in defending an indigent in a criminal case does not offend equal protection by depriving the indigent against whom a judgment therefor has been obtained of rights afforded other judgment debtors and is otherwise not unreasonable, the right to counsel has neither been denied nor chilled thereby. Compare James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). See also, United States v. Durka, 490 F.2d 478 (7 Cir.1973); People v. Amor, 12 Cal.3d 20, 114 Cal. Rptr. 765, 523 P.2d 1173 (Sup. Ct. 1974); Opinion of Justices, 109 N.H. 508, 256 A. 2d 500 (Sup. Ct. 1969); Wicks v. City of Charlottesville, 215 Va. 274, 208 S.E.2d 752 (Sup. Ct. 1974).
As Fuller, supra, said:
The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.
We live in a society where the distribution of legal assistance, like the distribution of all goods and services, is generally regulated by *34 the dynamics of private enterprise. A defendant in a criminal case who is just above the line separating the indigent from the non-indigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship. [417 U.S. at 53, 94 S.Ct. at 2124.]
Our review and interpretation of both the lien and reimbursement provisions of the statute here involved satisfies us that they do not chill any constitutional right of an indigent defendant covered thereby or deprive him of equal protection under Fuller. As heretofore indicated, we construe "services" to include not only counsel fees but other expenses actually incurred by the Defender in representing the indigent.
Defendant need only reimburse the Defender if "it appears that * * * [he] has or reasonably expects to have means to meet some part, though not all, of the cost of the services rendered to him," and in such event "he shall be required to reimburse the office, either by a single payment or in installments, in such amounts as he can reasonably be expected to pay." But "no default or failure in the making of any such payment shall in any wise affect or reduce the rendering of the services to him." N.J.S.A. 2A: 158A-16.
The provisions of N.J.S.A. 2A:158A-17 vest discretion in the Defender to effectuate a lien on defendant's property whenever the reasonable value of the services rendered appears to be less than $150 and requires the lien to be effectuated when such value appears to exceed $150.[5] Practical considerations rationally sustain this monetary classification. Accordingly, it does not violate equal protection. Cf. Fuller, supra, 417 U.S. at 46, 94 S.Ct. 2116. *35 Indeed, the fact that the lien is mandatory only where the value of services is in excess of $150 is more protective of indigent defendants than the statute considered in Fuller.
Moreover, although designated a "lien", it only has the "force and effect of a Judgment at Law", except that it is valid and may only be subject to execution for a period of ten years "unless sooner discharged." It is void unless within ten days of the filing of the notice of lien the Defender, either by certified mail or personal service, serves on defendant a copy thereof with a statement of the date of filing. N.J.S.A. 2A:158A-17 and 19.
Since an indigent against whom the lien is filed has all of the exemptions, rights and protections of any judgment debtor, there is no equal protection problem. See, e.g., R. 4:59-1; 4:50-1; 4:50-3; 4:65-2; 4:65-5; N.J.S.A. 2A:17-19; N.J.S.A. 2A:17-55. See generally, 2A: 17-1 et seq. Additionally, while the lien may be placed against all of his property, present and after-acquired, he is protected from the burden of financial hardship not only by being treated in the same manner as any judgment debtor but also by being given additional benefits under the Public Defender Act.
Thus, the Defender is authorized to compromise and settle any claim for services whenever the financial circumstances of the indigent are such that in the Defender's judgment "the best interest of the State will be served" thereby. N.J.S.A. 2A:158A-20. Again, in any action or proceeding, either to collect moneys due for reimbursement or to enforce the lien or judgment, the indigent may contest the value of the Defender's services. N.J.S.A. 2A: 158A-19. Moreover, although the statute does not expressly so provide, we have concluded that the evident intent of the Legislature, gleaned from the pertinent provisions of the act, is that in any such action or proceeding the indigent may seek a determination by the court of the extent to which, if at all, recovery of all or any part of the amount *36 due would impose a manifest financial hardship and, therefore, should not then be enforced as a debt or a lien or should then be reduced to an amount he reasonably may be expected to pay. Cf. 79-83 Thirteenth Ave. Ltd. v. De Marco, 44 N.J. 525 (1965). The notice to him of the action or other proceeding must advise him of this right of contest.
The procedure, including the time and method of serving the notice and the contents thereof, would normally be in accordance with the requirements of the action or proceeding involved, as set forth in the applicable rule or statute. Thus, if the proceeding is an action to collect the moneys due, the complaint should contain a specific notice of the indigent's right of contest. If the proceeding is to enforce the judgment or lien by way of execution, the notice should conform to the governing statute or rule and, in addition to the provisions required thereunder, should contain a statement that he may contest the value of the services and his financial ability to pay. Compare R. 4:59-1(c); 4:65-2; 4:65-5. If there is no existing rule or statute requiring advance personal notice either by certified mail to the debtor's last known address or personal service before a sale of the property involved, such written notice should be given, within a reasonable time prior to the sale, indicating the nature of the proceeding and describing his right of contest. The indigent, just as any other judgment debtor, also may seek relief from the judgment or a modification or discharge of the lien under existing law, or affirmatively move to have the lien discharged or otherwise modified for good cause on notice to the Defender. See, e.g., R. 4:50-1; 4:50-3; Secretary of State v. GPAK Corp., 95 N.J. Super. 82 (App. Div. 1967); Heljon Management Corp. v. Di Leo, 55 N.J. Super. 306 (App. Div. 1959). We are of the view that the Public Defender Act contemplates that where a proceeding is either to enforce the judgment or lien or to discharge or modify the same, it *37 should be accomplished, wherever possible, in a summary fashion under R. 4:67.
As we read Fuller, it does not require, as a matter of constitutional right, that the indigent be afforded an opportunity at a court hearing to show his financial inability to pay. Nevertheless, we note that the court commented on the fact that the judgment execution statute of the state there involved provided for a hearing before execution could be levied, and the recoupment statute afforded the indigent an opportunity to show at any time that recovery of the costs of his defense would impose "manifest hardship." 417 U.S. at 50, n. 11, 94 S.Ct. 2116. If this interpretation of Fuller is erroneous, the construction we have given our Public Defender Act in this respect will protect it from possible constitutional infirmity on this ground. See State v. De Santis, 65 N.J. 462 (1974); N.J. Assoc. Ins. Agents v. Hospital Serv. Plan, 128 N.J. Super. 472, 487 (App. Div. 1974).
Plaintiff also predicates a challenge to N.J.S.A. 2A:158A-17 on its alleged deficiency on due process grounds in permitting liens to be filed without a prior hearing. This argument is also without substance.
As originally enacted in 1967, the statute, N.J.S.A. 2A:158A-17, required the Defender to have a court, on the basis of an affidavit of services, establish the reasonable value of his services. After such adjudication, the lien was filed. In 1969 that provision and the section dealing with collection of moneys due, N.J.S.A. 2A:158A-19, were amended so as to (1) eliminate the necessity of a court proceeding establishing the value of services before the filing of the notice of lien; (2) provide for the filing of such notice by the Defender after he determines such value; (3) require a copy of the notice of lien to be served on defendant within ten days of its filing in order that a valid lien be established, and (4) permit, in any action or proceeding to recover moneys due for reimbursement or to enforce *38 the lien or a judgment, a contest by defendant of the value of the services and, as we now hold, the extent to which the same should be awarded or enforced in view of defendant's then and reasonably foreseeable ability to pay.
It is evident from the present statutory scheme, as we have construed it, that the indigent is given not only adequate notice of the lien but also an ample opportunity thereafter to contest the amount thereof and its enforcement, to satisfy the demands of due process. See Fuller v. Oregon, supra, 417 U.S. 50, n. 11, 94 S.Ct. 2116. United States v. Durka, supra; People v. Amor, supra; Foosaner v. Director, Div. of Taxation, 58 N.J. 57, 62-63 (1971); Secretary of State v. GPAK Corp., supra. He is afforded an appropriate judicial hearing under the statute before any lien is fully executed or his property is actually taken from him. Compare North Georgia Finishing Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed. 2d 406, 416 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); dissenting opinion of Justice Pashman in King v. South Jersey Nat'l Bank, 66 N.J. 161, 187 (1974).
Plaintiff contends that an indigent defendant may be misled by being informed at his arraignment, under R. 3:4-2, of "his right to have counsel furnished without cost." Not so. He is, in fact, provided with counsel without cost. So long as he remains indigent, there is no cost to him. It is only when he is deemed financially able to pay that he is responsible therefor. Additionally, whatever erroneous impression he may get by such advice is clarified by the practice in the Defender's office. The reimbursement agreement that every defendant is requested by the Defender to sign provides in part:
It has been explained to me that upon the completion of the services rendered to me by the Public Defender, the Court will determine the reasonable value of said services and this sum shall be a lien on any *39 and all property which I either presently own or shall in the future acquire until the same is fully paid.[6]
The agreement contains an acknowledgment by a staff member of the Defender's office that before it was signed by the indigent, its contents were "first made known to him." If a client has an objection to the reimbursement agreement, it is explained that he need not sign it and that he will still be represented, but that at the end of the Defender's representation, a lien will be placed against his property.
For the foregoing reasons, the judgment is affirmed.
NOTES
[1] Although technically only the lien provision is under attack, we consider its relationship to the reimbursement section of the statute, N.J.S.A. 2A:158A-16, hereafter mentioned, to be so close as to justify a determination with respect to the validity of that section as well. Moreover, reading the various provisions of the statute in pari materia, as we should, we are satisfied that the term "services" in both N.J.S.A. 2A:158-16 and 17 covers as well other necessary expenses of representation, such as, for example, transcript costs on appeal. See N.J.S.A. 2A:158A-2 and 14.
[2] By subsequent amendments the Defender is also required to represent juvenile offenders where institutional commitment may result, N.J.S.A. 2A:158A-24, as amended by L. 1974, c. 33; effective June 1, 1975, persons involved in parole violation proceedings, and effective June 1, 1976, those charged with disorderly persons offenses or with the violation of any law, ordinance or regulation of a penal nature where there is a likelihood of imprisonment or "any other consequence of magnitude." L. 1974, c. 33. See R. 5:3-3(a) relating to Defender representation of juvenile offenders under the statute.
[3] N.J.S.A. 2A:158A-25, relating to representation of persons under 21 years of age, requires that the financial circumstances of the parents or legal guardians also be considered in determining eligibility for services, and entitles the Defender to recover the cost of such services from them to the same extent and in the same mannr "as is provided" under the statute. R. 5:3-3(a) requires the court to refer a juvenile, if he and his guardian or custodian are indigent, to the Defender where permitted by the statute.
[4] The report "shall include all * * * data on the operations of the office, the costs * * * [and] recommendations" for statutory and court rules changes.
[5] We assume that services valued at $150 would come within the Defender's discretionary authority.
[6] This form of agreement may need revision to indicate that the value is determined by the court when an action to collect or a proceeding to enforce the lien or judgment is instituted.