Commonwealth *v.* Opara, Appellant.

512

Argued March 24, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David Rudovsky*, with him *Kairys & Rudovsky*, for appellant.

*Mark Sendrow*, Assistant District Attorney, with him *Steven H. Goldblatt*, Assistant District Attorney, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., March 29, 1976:

This is an appeal from an order of the trial court directing appellant to pay the City of Philadelphia the sum of $750 as reimbursement for counsel fees. The order is vacated as being without authority, failing to

comply with Pa.R.Crim.P. 1405(a) and 1407(c), violative of appellant's right to due process of law as guaranteed by the Fourteenth Amendment, and unnecessarily chilling the right to counsel guaranteed by the Sixth Amendment and made applicable to the states through the Fourteenth.

Appellant was arrested on January 5, 1974, and charged with driving under the influence of alcohol.[1] Counsel from the Philadelphia Defender Association represented appellant at a Municipal Court trial on May 28, 1974, at which time appellant was found guilty and sentenced to two years probation. At the close of trial, upon counsel's statement that appellant wished to appeal and could not afford counsel (N.T. 11), the Philadelphia Defender was again appointed to represent appellant. In the Court of Common Pleas, appellant pleaded guilty to a charge of driving while under the influence of alcohol and was sentenced to one year probation and was ordered to pay $750 to the City of Philadelphia within 60 days for the use of the Philadelphia Defender Association or to spend 30 days in County Prison for contempt.[2]

I

There is no Pennsylvania statute specifically authorizing the reimbursement order of the lower court, a fact acknowledged by that court itself in its opinion filed pursuant to Pa. Superior Ct. R. 46.

---

1. The Vehicle Code, §1037, Act of April 29, 1959, P.L. 58, §1037, 75 P.S. §1037.

2. The decision of the trial judge to enter the reimbursement order was apparently based on appellant's answers to the judge's interrogation at the time the guilty plea was entered. Appellant, an electrician, acknowledged that he had probably earned about $13,000 during 1973 (N.T. 7-8), but stated that he had worked only seven weeks in 1974 and was not then working and had no money (N.T. 8-9). The court did not believe appellant's testimony as to his current earnings and status, and did not respond to the offer to present proof of those facts (N.T. 11). *See* n.15 *infra*.

The Public Defender Act,[3] which provides for the establishment of public defender offices for the representation of indigent accused, is specifically made inapplicable to the City of Philadelphia by §3.[4] Therefore, its provisions for restitution[5] do not provide a basis for the lower court's order in this case.

The Act of January 19, 1968,[6] contains provision for the reimbursement by the defendant or a relative of the defendant to the county for compensation and expenses incurred and paid to court appointed counsel.[7] However, the Act is not applicable where a local nonprofit organization represents the defendant.[8] Furthermore, the court is authorized to order reimbursement only upon petition of the county that paid the compensation.[9]

The Act of July 22, 1970[10] also contains provision for a reimbursement order on petition of the county, but it is applicable only in cases where the defendant is charged with murder.

Finally, Pa.R.Crim.P. 318 provides simply for the assignment of counsel; it has no provision authorizing the court to order payment of fees.

In the present case, however, the lower court found "derivative authority" for its order in §1037 of The Vehicle Code,[11] under which appellant was charged. That section provides for a penalty of a fine of $100 to $500 or up to three years imprisonment, or both. According to the opinion of the lower court, "it requires no vast leap of logic to find within this same penalty provision of the

---

3. Act of Dec. 2, 1968, P.L. 1144, No. 358, §§1-13, 16 P.S. §§9960.1-9960.13.

4. 16 P.S. §9960.3.

5. Act of Dec. 2, 1968, P.L. 1144, No. 358, §8, 16 P.S. §9960.8.

6. P.L. (1967) 984, §§1-5, 19 P.S. §§791-795.

7. §3, 19 P.S. §793.

8. §2, 19 P.S. §792.

9. §3, 19 P.S. §793.

10. P.L. 535, No. 180, §1, 19 P.S. §1501.

11. Cited note 1, *supra*.

code derivative authority for the court, in its discretion to divert the payment expressly provided for, up to the maximum amount, for reimbursement of defense costs. Certainly, the end result as far as the defendant is concerned is the same."

There are, however, several problems with this leap of logic.

Since the lower court's order was for $750 it was for an amount that exceeds the statutory maximum of $500. Whatever authority §1037 might be for the lower court to divert the fine to an order of reimbursement, it could not authorize a fine (diversion) in excess of the statutory provision. To the extent that a sentence exceeds the maximum provided for by statute, it is illegal. *Commonwealth ex rel. Giuffrida v. Ashe, Warden*, 137 Pa. Superior Ct. 528, 10 A.2d 112 (1939); *see, Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973); *Commonwealth v. Washington*, 228 Pa. Superior Ct. 175, 323 A.2d 380 (1974). The lower court itself seems to acknowledge such a limitation by its reference to §1037 as "authority ... to divert the payment ... up to the maximum amount ...."

Furthermore, the legislature has specifically provided for the disposition of monies collected for §1037 violations. Section 1301(a) of The Vehicle Code[12] stipulates that such monies

> *"shall* be paid to the treasurer of the county wherein the violation occurred, to be used by such county for the payment of physicians' fees for the examination of persons accused of violating the provisions of the said section. Any balance remaining [at the end of the calendar year and not so used] *shall* be used for county highway and bridge purposes." (Emphasis added).

The legislature having specifically provided for the disposition of §1037 funds, the court may not divert these monies elsewhere. *Werfel v. Commonwealth*, 5 Binn 65, 68 (Pa. 1812).

---

12. Cited note 1, *supra*, 75 P.S. §1301.

Thus, the amount of the payment ordered, the recipient of the payment, and the use to which the payment was directed to be put, were all directly in conflict with the express provisions of §1037 and §1301(a) of The Vehicle Code.[13]

There being no authority for the order of the lower court, the order must be vacated:[14] " 'Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and

---

13. While §1037 provides for the payment of costs by a violator, it is clear that the lower court could not rely on this provision as authority for its reimbursement order. Attorney's fees are not "costs" absent a statutory provision giving them that character. *Kling Appeal*, 433 Pa. 118, 121, 249 A.2d 552, 554 (1969); *Commonwealth ex rel. Scherer v. Scherer*, 182 Pa. Superior Ct. 166, 168, 126 A.2d 483, 484 (1956).

14. Although the opinion of the lower court makes several references to the contract of the City of Philadelphia with the Defender Association, the court does not purport to rely on the contract as authority for its order. In fact, it acknowledges that the contract places the determination of eligibility for the services of the Association in the hands of the Chief Defender (or in the words of the court, "it places the poacher in charge of the preserve"). Similarly, the lower court does not purport to find authority for its order in the "Memorandum on Reimbursement" discussed in appellant's brief. In a letter dated March 14, 1975, the Assistant District Attorney stated to this court that after reviewing the opinion of the lower court "we have concluded that there are no additional arguments to be made. Therefore, we will not file a brief, and will rely on the trial judge's opinion." This action on the part of the District Attorney's office signifies to this court a concession that the lower court does not and could not premise its order on either the contract or the "Memorandum on Reimbursement." For this reason, this court will not undertake consideration of either of these documents. It may be added that when counsel can discern no basis for the lower court's order, it is his professional responsibility to say so. *See*, ABA Canons of Professional Ethics No. 7; Ethical Considerations 7-13, 7-14, and 7-23; Disciplinary Rules 7-102 and 7-103. *See* note 17 *infra*.

when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature, or in other words, to the will of the law.' Marshall, C.J. in *Osborn v. U.S. Bank*, 9 Wheaton 738, p. 866." *Commonwealth of Pennsylvania, Dept. of Welfare v. Garland*, 393 Pa. 45, 51 n.3, 142 A.2d 14, 16-17 n.3 (1958); *Melnick v. Melnick*, 147 Pa. Superior Ct. 564, 570 n.2, 25 A.2d 111, 114-115 n.2 (1942).

## II

Even if the lower court's order were somehow authorized by §1037 of The Vehicle Code, it would be invalid in that the requirements of Pa.R.Crim.P. 1405(a) and 1407(c) were not complied with.

Rule 1405(a) requires that the court afford counsel the opportunity to present argument and information relative to sentencing. In this case, counsel for appellant offered to submit proof of appellant's present year's employment, but the offer was ignored by the lower court (N.T. 11). Rule 1407(c) requires that the court in sentencing a defendant to pay a fine consider the burden of that fine upon the defendant by reason of his financial means. Here the lower court foreclosed such consideration by its refusal either to accept any evidence of appellant's inability to pay or to accept the prior conclusion of the Defender Association that appellant was indigent.[15] In *Commonwealth v. Martin*, 233 Pa.

---

15. The following exchange occurred at close of trial:
"MR. STANSHINE [Attorney for Phila. Defender Assn.]: May I ask you something about this case? [The court had already called the next case.]
THE COURT: Yes.
MR. STANSHINE: If your Honor were shown proof that he worked only seven weeks this year, would you change that order?
THE COURT: This man worked last year and made thirteen

Superior Ct. 231, 335 A.2d 424 (1975), this court vacated a similar fine imposed by a lower court rejecting or ignoring a prior finding of indigency and without considering any further information as to the defendant's financial status. The judge's order was held invalid for failure to comply with Rule 1407(c) and as being but a thinly veiled effort to bypass the specific procedure for seeking reimbursement provided for by The Public Defender Act.[16]

## III

In the normal case, the above reasons would be sufficient for vacating the lower court's order of reimbursement. However, this is the second such case to reach this court from the same trial judge.[17] In his opinion in the present case, the judge stated that

"the real controversy revolves about the continuing failure of the Defender Association of Philadelphia to discharge its obligations to the taxpayers of Philadelphia, from whom it takes its charter."

Furthermore, he announced that

"[u]ntil the Defender Association demonstrates some willingness to meet its obligation under the agreement to carefully screen defendants to guarantee that they meet the indigency requirements set forth therein, this court will continue to tax defendants for the costs of their defense where they improperly invoke its benefits."

---

thousand and some dollars and still used the Voluntary Defender. He is a fraud. He wants to go out and get drunk; he wants to get out and play around. When he gets caught, he wants it free. He is not going to get away with it." (N.T. 11.)

16. Cited note 3, *supra*.

17. In *Commonwealth v. McKnight*, 231 Pa. Superior Ct. 737 (1974) *(per curiam)*, this court reversed a similar order of reimbursement when counsel for the District Attorney's office conceded at argument that the lower court had no authority for its action.

In ordering appellant to reimburse the City of Philadelphia the sum of $750 or face thirty days in jail for contempt, the judge took the position that "a defendant is entitled to the free services of the Defender Association only upon a determination by the chief defender that he qualifies as an indigent. Under the terms of the [contract between the City and the Defender Association, February 28, 1969] this consists of a discretionary act and we find nothing therein to suggest that this procedure must be elaborated to meet any constitutional protections. By the same token, we can see no justification for subjecting action by the court, which merely performs this same discretionary act on which the chief defender has defaulted, to any constitutional test."

Recent decisions of the United States Supreme Court demonstrate, however, that Constitutional tests do apply to orders of reimbursement for the services of appointed counsel. *See, Fuller v. Oregon,* 417 U.S. 40 (1974); *James v. Strange,* 407 U.S. 128 (1972).[18]

-A-

"Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process ....." *Giaccio v. Pennsylvania,* 382 U.S. 399, 402 (1966). "Certainly one of the basic purposes of the Due

---

18. In outlining the Constitutional deficiencies of the order of reimbursement imposed by the lower court, we do not intend to pass on the constitutionality of Pennsylvania statues that provide for recovery of expenses from defendants represented by appointed counsel (statutes cited, *supra*) nor do we purport to establish that the requirements set forth herein must be contained in such statutes. The Supreme Court itself has refused to make any "broadside pronouncement" on the general validity of such statutes. *James v. Strange, supra* at 133. Any revision of these Pennsylvania statutes as may be required by *Strange* and *Fuller v. Oregon, supra,* is for the legislature.

Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land." *Id.* at 403.

The due process clause applies to sentencing procedure. *Williams v. New York,* 337 U.S. 241 (1949); *Commonwealth v. Shoemaker,* 226 Pa. Superior Ct. 203, 212, 313 A.2d 342 (1973). Although the requirements of due process at the time of sentencing may not be as stringent as those at trial,[19] nevertheless, because an order of reimbursement necessitates a determination of fact not related to the matter before the court at the time of adjudication of guilt,[20] and because of the constitutional right of an indigent to counsel provided by the state,[21] due process at least requires that *before* such an order may be made, the defendant must have received notice that the matter may be raised by the trial court, and he must be given a hearing in which he is permitted to be heard and to present to an impartial tribunal evidence of his indigency. Should the hearing result in a determination of ability to pay, the defendant must receive some sort of an accounting as to the costs of his representation or some factual basis for the determination of the amount to be reimbursed. In imposing the order of reimbursement, the court should make provision for the defendant to be able to petition for remission of payment of the amount due (or any part yet owed) at any time upon a showing of indigency. And finally, the defendant may not be held in contempt for nonpayment without first being provided the opportunity to show that nonpayment is not the result of an intentional refusal or bad faith.[22] None of these requirements of due process was fulfilled.

---

19.  *See Williams v. New York, supra* at 251.

20.  *Cf., Commonwealth v. Dooley,* 209 Pa. Superior Ct. 519, 232 A.2d 45 (1967). (allocatur refused).

21.  *See* Part B, *infra.*

22.  These guidelines have been extracted from *Fuller v. Oregon, supra.* Although there the question presented herein was not reached,

First: There is nothing in the record in this case to indicate that appellant had any notice that he would be subject to an evaluation of his indigent status at the conclusion of trial. There is no statute providing such notice, nor are there any documents or record to indicate that he should have been aware of this possibility. The lower court maintains that the requirement of notice was satisfied by the provision in §1037 for a fine. This ignores one of the purposes of notice - to provide the opportunity to prepare for the specific subject to be heard. The fact that a statute informs a person that if he acts in a specified way he may be fined cannot by any leap of logic inform him that behavior not the subject of the statute may have the same result. "A fine is a pecuniary punishment imposed by a court for an offense." *Commonwealth ex rel. Saeger v. Dressell,* 174 Pa. Superior Ct. 39, 42, 98 A.2d 430, 432 (1953) (citation omitted). Although §1037 provides appellant with notice that he may be fined for its violation, it cannot be said to provide him with notice that he may be required to reimburse the City for the services of appointed counsel.

Second: The record further discloses that appellant was denied the opportunity to be heard and to present evidence on the question of his indigent status. While it is true that the lower court questioned appellant as to his financial status, it refused to believe his statements or to accept proof of his inability to pay for counsel (N.T. 8-11). This is not a case where it can be said that appellant waived grounds for challenging the sentencing procedure

---

for failure to raise it below, the Supreme Court noted that Oregon's recoupment statute, including a schedule of fees, was published in the statutes and that Oregon law provided for hearings. 417 U.S. 40, 50 n. 11. Furthermore, the Supreme Court throughout its opinion placed great emphasis on the numerous safeguards in the Oregon statute to ensure that only those who could would ever be required to pay. *See* 417 U.S. at 43 n. 5, 44-46; *cf., Stroinski v. Office of Public Defender,* 134 N.J. Super. 21, 338 A.2d 202 (1975).

for failure to offer proof. *Commonwealth v. Shoemaker, supra; Cf., Commonwealth v. Rollins*, 224 Pa. Superior Ct. 467, 307 A.2d 385 (1973). Here, counsel for appellant offered to prove appellant's financial status (N.T. 11).[23] The refusal of the lower court to accept the offer, while at the same time rejecting the prior determination of the Defender's office that appellant was entitled to free representation, was a denial of due process.

Third: The record indicates a predisposition on the part of the lower court to believe that many represented by the Defender's Association are not entitled to free representation. In the words of the lower court

"Although the nominal litigant in this appeal is the defendant, in truth the real controversy revolves about the continuing failure of the Defender Association of Philadelphia to discharge its obligations to the taxpayers of Philadelphia . . . .

"In our opinion the important responsibility of screening criminal defendants whose indigence qualifies them for representation by the Defender Association is, unfortunately, in precisely the wrong hands; put bluntly, it places the poacher in charge of the preserve. Some six years of experience have demonstrated to this court that the agreement which was entered into in order to meet the mandate of the U.S. Supreme Court to provide representation to criminal defendants unable to afford private counsel has been utilized as well for the aggrandizement of the Defender Association of Philadelphia . . . . .

"Until the Defender Association demonstrates some willingness to meet its obligation under the agreement to carefully screen defendants to guarantee that they meet the indigency requirements set forth therein, this court will continue to tax defendants for the costs of their defense where they improperly invoke its benefits."

---

23. *See* note 15, *supra.*

It is sufficient to observe that there is nothing in the record to support these statements. If indeed there is such as abuse as suggested by the lower court, the remedy is not the issuance of unauthorized orders of reimbursement.

Fourth: There is no indication in the record that the basis for the lower court's decision as to the amount to be reimbursed was anything but arbitrary. No inquiry was made of the Defender as to the amount of time spent on the case or the value of the services rendered. It may be noted that the state legislature requires appointed counsel seeking payment under the Act of January 19, 1968[24] to submit sworn statements itemizing the time expended, services rendered, expenses incurred, and the compensation and reimbursement applied for. The statute also sets the rate of compensation and creates an upper limit on the amount except for extraordinary circumstances. 19 P.S. §791.

Fifth: The order of the lower court contained no provision to enable appellant to petition the court for remission of payment of the amount owed upon a subsequent showing of indigency.

And finally: The lower court appeared to foreclose the possibility of allowing appellant in any subsequent contempt proceeding to show that nonpayment was not the result of bad faith or intentional refusal.[25]

For the above reasons, the order of the court is invalid in that it violates appellant's right to due process of law.

---

24. P.L. (1967) 984, §1-5, 19 P.S. §§791-795, providing for appointment and compensation of counsel where services of a local nonprofit organization cannot be utilized.

25. "The Court: This man is not in my judgment qualified as an indigent. He is taking advantage of society. Now he has been caught up with. He will pay $750. Upon failure to pay it, he will be brought before me for contempt of court, and I will give you 30 days in jail." (N.T. 10-11.)

-B-

There remains a final reason why the lower court's order must be subject to a constitutional test, which concerns the effect of such an order on the exercise of the Sixth Amendment right to counsel.

The right of an indigent accused to free counsel is established. *Argersinger v. Hamlin,* 407 U.S. 25 (1972); *Gideon v. Wainwright,* 372 U.S. 335 (1963). It is also established that action by the state that unnecessarily chills the exercise of a constitutional right is invalid. *See, e.g., United States v. Jackson,* 390 U.S. 570 (1968). The possibility of being subjected at the close of trial to an arbitrary determination as to ability to pay for the services of appointed counsel, without any of the protections afforded by a hearing comporting with due process, may lead persons truly indigent and therefore eligible for free counsel to choose to forgo counsel initially. While it is true that the Supreme Court in *Fuller v. Oregon, supra,* rejected the "chill" rationale propounded by the California Supreme Court in *In Re Allen,* 78 Cal. Rptr. 207, 71 Cal. App. 2d 388, 455 P.2d 143 (1959), it did so in the context of a case in which it was dealing with a reimbursement statute "carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so.[26] Those who remain indigent or for whom repayment

---

26. In rejecting the California Supreme Court's reliance on the chill argument, the United States Supreme Court refers to *Allen* as "a case invalidating California's recoupment legislation." 417 U.S. at 51 (emphasis added). Therefore, *Fuller* arguably does not dispose of the "chill" rationale where there is no statute authorizing an order of reimbursement. (In fact, *Allen* did not deal with a specific recoupment statute. Rather, the California Supreme Court found that the statute under which the order had been issued did *not* specifically authorize an order of recoupment and therefore assumed that the lower court acted pursuant to the omnibus clause of the statute governing probation orders.)

would work 'manifest hardship' are forever exempt from any obligation to repay." *Fuller v. Oregon, supra* at 53. "Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship."[27] *Id.* at 54. Justice DOUGLAS in his concurring opinion noted that it was this narrow construction of the statute with its limitations on imposing such an obligation that disposed of the "chill" argument. *Id.* at 56. (Justice DOUGLAS also noted that the statute placed limits on the amount to be reimbursed, except for extraordinary circumstances, *Id.* at 55 n.2.) In the present case, not only is there no such "carefully tailored" statute, the lower court itself failed either at the time of hearing or in the provisions of its order to afford appellant any of the safeguards emphasized in *Fuller. Compare State v. Barklind,* 12 Wash. App. 818, 532 P.2d 633 (1975) (probation order of reimbursement, though made without express statutory authorization, did not chill exercise of right to counsel and is valid in that "[e]ven without a statute, the trial court met all of the requirements of the constitution and adhered to the principles of fairness delineated in *Fuller* ....", 12 Wash. App. at 821, 532 P.2d at 636) with *State v. Hess,* 12 Wash. App. 787, 532 P.2d 1173 (1975) (similar order violated state constitutional right to counsel, court noting total absence of safeguards of *Fuller*). *See, People v. Amor,* 114 Cal. Rptr. 765, 12 Cal. App. 3d 20, 523 P.2d 1173 (1974), distinguishing *In Re Allen, supra,* in that because of a statutory provision for reimbursement

27. The statutory safeguards noted by the court in *Fuller* included specification of what costs could be included, application to convicted defendants only, requirement of a determination of ability to pay prior to issuance of an order, guidelines for the court's determination, provision for petition for remission of payment or amount due at any time, and requirement of an opportunity to show nonintentional nonpayment or lack of bad faith prior to being held in contempt. 417 U.S. at 43, n. 5, and 44-46.

defendant in *Amor* had prior notice of reimbursement possibility, that she would be required to reimburse only that amount which the court determined she had the ability to pay and by the terms of the statute she could not be imprisoned for nonpayment (execution issuable only as on a judgment in a civil action). *Id.* at 1176.

Where neither the order nor the proceeding out of which it arose contains assurance that only those able to repay will ever be required to, there is a real danger that some may choose to forgo their right to appointed counsel.[28] This being so, such an order is invalid in that it unnecessarily infringes on the right to counsel. Action by the state which unnecessarily chills the exercise of a constitutional right is invalid. *United States v. Jackson, supra.*

The order of the lower court for appellant to reimburse the City of Philadelphia $750 for the use of the Philadelphia Defender Association is vacated.

CERCONE, J., joins in this opinion.

WATKINS, P.J., and JACOBS, HOFFMAN, PRICE, and VAN DER VOORT, JJ., concur in the result.

---

28. This court has previously pointed out that such safeguards "are consistent with the high value our society places on representation by counsel of the criminally accused." *Commonwealth v. Martin,* 233 Pa. Superior Ct. 231, 236, 335 A.2d 424 (1975), referring to legislatively created remedy for the filing of false affidavits to obtain counsel under the provisions of The Public Defender Act, Dec. 2, 1968, P.L. 1144, No. 358, §1-13, 16 P.S. §9960.1 - 9960.13. (This act is specifically made inapplicable to Philadelphia by §3, 16 P.S. §9960.3).