(No. 52292.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RICHARD COOK, Appellant.

*Opinion filed June 30, 1980.*

Robert Agostinelli, Deputy Defender, and Charles Hoffman, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and David Cassorla, Assistant Attorneys General, of Chicago, of counsel), for the People.

William T. Barker and Alan M. Posner, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for *amicus curiae* Chicago Lawyers' Committee for Civil Rights Under Law, Inc.

Robert W. Johnson, Sr., James P. Manak, and Bernard Carey, State's Attorney, of Cook County, of Chicago (Marcia B. Orr, and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for *amicus curiae* National District Attorneys Association.

Steven Lubet, of the Northwestern University Legal Clinic, and David Goldberger, of the Roger Baldwin Foundation, of Chicago, for *amicus curiae* American Civil Liberties Union.

MR. JUSTICE WARD delivered the opinion of the court:

On December 7, 1978, a complaint was filed in the circuit court of Warren County charging Richard Cook, the defendant, with the unlawful possession of cannabis

in violation of the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 704(c)). Bail was set at $1,000 and the defendant posted the required 10% with the clerk of the court to secure his release. (Ill. Rev. Stat. 1977, ch. 38, pars. 110—7(a), (b).) His later motion for the appointment of counsel was allowed when the court found him to be indigent. (Ill. Rev. Stat. 1977, ch. 38, par. 113—3(b).) The defendant's motions to quash the search warrant and to suppress evidence were granted and the People appealed. While the appeal was pending, the defendant moved to recover his bail deposit under the provisions of Supreme Court Rule 604(c) (73 Ill. 2d R. 604(c)) and the People countered with a motion which sought reimbursement from the bail deposit for legal services provided the defendant by appointed counsel (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g)). The appellate court granted the People's motion and directed the trial court to determine "the reasonable value of appointed counsel's services," ordering that "such sum is to be paid to Warren County from the defendant's bail deposit of $100." We granted Cook's petition for leave to appeal under Supreme Court Rule 315 (73 Ill. 2d R. 315). The People's appeal in the appellate court from the order suppressing evidence and quashing the warrant has not yet been decided.

The right of an accused to counsel under the sixth amendment cannot be dependent upon ability to pay for an attorney's services. (See *Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006; *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792; *Griffin v. Illinois* (1956), 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585.) There is statutory recognition of this right. As stated in section 113—3(b) of the Code of Criminal Procedure of 1963, "In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender [or other appointed counsel] shall be appointed

counsel." Ill. Rev. Stat. 1979, ch. 38, par. 113—3(b).

Another statute, which is the one we must consider here, provides:

> "Whenever a defendant who has been admitted to bail utilizes the services of a public defender or other appointed counsel, the amount deposited may be used to reimburse the county funding the legal services." (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g).)

The defendant contends that this statute is violative of his rights to equal protection and due process under the United States and Illinois constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2) and that it is an unconstitutional impairment of his right to counsel (U.S. Const., amend. VI; Ill. Const. 1970, art. I, sec. 8).

We will first address the equal protection question of whether any distinction in treatment within the legislative classification, *viz.* indigent persons for whom counsel has been appointed, is rationally related to a legitimate State interest. See *Fuller v. Oregon* (1974), 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116. See also *Haughton v. Haughton* (1979), 76 Ill. 2d 439, and cases cited therein.

The People argue that they have a proper interest in the recovery of at least a part of the expense for counsel fees incurred for indigent defendants who have exhibited an ability to pay by posting bail and that section 110—7(g) bears a rational relationship to this effort at reimbursement. The Supreme Court of the United States has recognized there is a legitimate State interest in "replenishing a county treasury from the pockets of those who have directly benefited from county expenditures," but it has done so only when it was demonstrated that the State's actions have not been tainted by an invidious discrimination. *Rinaldi v. Yeager* (1966), 384 U.S. 305, 309, 16 L. Ed. 2d 577, 580, 86 S. Ct. 1497, 1500; see also *Fuller v. Oregon* (1974), 417 U.S. 40, 53-54, 40 L. Ed. 2d 642, 654-55, 94 S. Ct. 2116, 2124-25; *James v. Strange* (1972), 407 U.S. 128, 141, 32 L. Ed. 2d 600, 610-11, 92 S. Ct.

2027, 2034-35.

While the defendant acknowledges that the State may under certain circumstances seek reimbursement, he contends that the statute here, which singles out only those indigent defendants who have posted bail, has no fair and substantial relationship to the overall goal of recoupment. This is because it does not seek recovery from other defendants with appointed counsel who though indigent at the time of appointment may have become financially able to contribute to the cost of their legal defense.

The People's response is not convincing. First, they say that while the statute does not specifically name those indigent defendants who have not posted bail, there is nothing in section 110—7(g) excluding them or prohibiting the People from seeking reimbursement. To include indigents who have been released on their own recognizance or who have been unable or unwilling to post bail would go beyond the language of the statute, which explicitly applies to those "admitted to bail." Too, such indigent defendants would undoubtedly urge that including them would violate this court's holdings specifically prohibiting the recovery of court costs unless provided for by statute. See, *e.g.*, *People v. Nicholls* (1978), 71 Ill. 2d 166, citing *Galpin v. City of Chicago* (1911), 249 Ill. 554. Thus, all members of the class of indigent defendants represented by appointed counsel would not be similarly treated under the statute.

Second, we do not accept the People's argument that the ability to post bail indicates the defendant's financial ability to pay for the services of appointed counsel. This court has never adopted any presumption (which would be, in this case, an irrebuttable one) that the posting of bail, without more, was a sufficient indicium of ability to pay wholly or partially for legal counsel. Bail may be posted with borrowed funds or by relatives or friends. In cases where the defendant was denied either appointed

counsel or a free transcript on appeal solely because he was able to post bail this court has held that such a denial was improper where the court had not first determined that the defendant was in fact indigent. See *People v. Pankoff* (1978), 70 Ill. 2d 69; *People ex rel. Baker v. Power* (1975), 60 Ill. 2d 151; *People v. Eggers* (1963), 27 Ill. 2d 85.

Since a finding that members in a class are not being treated alike does not of itself warrant the conclusion that the statute is unconstitutional, we now turn to the question of whether a rational relationship exists between the legitimate State interest and the statutory scheme set out in section 110—7(g). The Supreme Court in *Rinaldi v. Yeager* (1966), 384 U.S. 305, 308-09, 16 L. Ed. 2d 577, 580, 86 S. Ct. 1497, 1499-1500, stated:

> "The Equal Protection Clause *** imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. 'The Constitution does not require things which are different in fact *** to be treated in law as though they were the same.' *Tigner v. Texas,* 310 U.S. 141, 147, [84 L. Ed. 1124, 1128, 60 S. Ct. 879, 882]. Hence legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' [Citations.]"

In *Rinaldi* the Supreme Court considered a constitutional challenge to a New Jersey statute which imposed a duty to pay for transcripts following an unsuccessful appeal only upon those defendants who had been ordered imprisoned. Those defendants losing their appeals who were given suspended sentences, probation or ordered to pay

fines were exempted from this obligation to make payment. The court held the statute to be invidiously discriminatory in that a financial burden was imposed only upon an institutionalized defendant-appellant, even though all defendants-appellants have gotten the benefit of a transcript for appeal. The court stated:

"There is no defensible interest served by focusing on that distinction as a classifying feature in a reimbursement statute, since it bears no relationship whatever to the purpose of the repayment provision." 384 U.S. 305, 309, 16 L. Ed. 2d 577, 580, 86 S. Ct. 1497, 1500.

We judge the circumstances in *Rinaldi* are analogous to those here. Under section 110—7(g) only those defendants posting bail are obliged to reimburse the county for the services of their appointed counsel, even though those other defendants who are released on personal recognizances or who do not post bail have received the same benefit of appointed counsel. The resulting financial drain on public funds, which the county now seeks to replenish under section 110—7(g), is caused, however, by services provided to the entire class of indigent defendants with appointed counsel and not only those who have been released on bail. There is no rational relationship between the legislative purpose of reimbursement for the expense of appointed counsel and a statute which imposes an obligation only on one segment of this class of indigent defendants based upon the improper and seemingly conclusive presumption that the posting of bail demonstrates an ability to pay for those legal services.

The People err in contending that the Supreme Court's decision in *Fuller v. Oregon* (1974), 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116, favors their position. In *Fuller,* the court upheld the constitutionality of an Oregon statute which imposed the obligation to reimburse for court costs, including legal counsel, upon all convicted

defendants (Or. Rev. Stat. 1973, sec. 161.665). The statutory scheme considered in *Fuller* was significantly different from that of section 110—7(g). Subsections 3 and 4 of the Oregon statute provided:

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under ORS 161.675." 417 U.S. 40, 43 n.5, 40 L. Ed. 2d 642, 649 n.5, 94 S. Ct. 2116, 2120 n.5.

The court, in rejecting the defendant's argument that this provision discouraged the exercise of his right to counsel, observed: "The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work 'manifest hardship' are forever exempt from any obligation to repay." 417 U.S. 40, 53, 40 L. Ed. 2d 642, 654, 94 S. Ct. 2116, 2124.

Other courts, in considering reimbursement statutes of this kind, have similarly focused upon the presence or absence of procedural safeguards requiring judicial examination into an indigent defendant's present or future ability to reimburse as the hinge on which the question of the statute's constitutionality turns. (See, *e.g., State v. Barklind* (1976), 87 Wash. 2d 814, 557 P.2d 314; *Stroinski v. Public Defender* (1975), 134 N.J. Super. 21, 338 A.2d

202; *People v. Amor* (1974), 12 Cal. 3d 20, 523 P.2d 1173, 114 Cal. Rptr. 765; *Wicks v. City of Charlottesville* (1974), 215 Va. 274, 208 S.E.2d 752, *appeal dismissed* (1975), 421 U.S. 901, 43 L. Ed. 2d 769, 95 S. Ct. 1548. See also Annot., 79 A.L.R.3d 1025 (1977).) Section 110—7(g) contains no provision for inquiry into the defendant's ability to pay. Other similar reimbursement statutes we have examined require that a defendant's present or future ability to pay for services of appointed counsel be considered before an order for reimbursement may be entered. (See, *e.g.,* Fla. Stat. Ann. sec. 27.56 (West 1979); Kan. Stat. sec. 22—4513 (Supp. 1979); Minn. Stat. sec. 611.35 (Supp. 1980); N.J. Rev. Stat. secs. 2A; 158A—16, 158A—17 (1979); Pa. Stat. Ann. tit. 19, sec. 793 (Purdon 1979).) There are holdings, relying specifically upon *Fuller,* that go beyond this and require a further condition which would allow the court upon petition to order remission of any or all reimbursement payments due if it appears that undue hardship to the defendant or his family would result. See *Olson v. James* (10th Cir. 1979), 603 F.2d 150; *Commonwealth v. Opara* (1976), 240 Pa. Super. 511, 362 A.2d 305.

The People cite *People v. Estate of Scott* (1977), 66 Ill. 2d 522, saying that the statute need not specifically provide for a hearing in order to guarantee procedural due process and that in any event the defendant had a hearing before the appellate court when it contested the People's motion for reimbursement. In *Scott,* which was decided before section 110—7(g) became effective, this court held that a defendant who pleaded guilty to attempted robbery and received a five-year sentence of probation could be required to pay court costs from her bail deposit. (See Ill. Rev. Stat. 1979, ch. 38, pars. 110—7(a), (i), 180—3.) The defendant in *Scott* argued that the statutes were constitutionally defective because they failed to set out any requirement for notice and

hearing before a judgment for costs could be entered, but this court held that due process was not violated since the trial court had in fact held such a hearing.

The record here, however, does not show that the defendant was given proper opportunity to present evidence as to his financial condition or that the appellate court considered his condition before entering its reimbursement order. Though the People argue that the court had before it the defendant's affidavit as to assets and liabilities which had been used to support his claim of indigency, it appears from the record that this was not so, since the trial record was not received in the appellate court until after the order was entered. In any event, it does not appear possible that the same affidavit that led the trial court to hold, without objection, that the defendant was indigent could have led the appellate court reasonably to order him to reimburse for services afforded because of his indigency.

A summary decision which orders reimbursement without affording a hearing with opportunity to present evidence and be heard acts to violate an indigent defendant's right to procedural due process. (See *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983; *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.) It also may serve to restrain such a defendant from exercising his right to the effective assistance of counsel. This is because if he knows that the money or other property posted for his bail will be subject to seizure to pay for legal services, regardless of his inability to pay he may choose not to exercise this constitutionally assured right. See, *e.g., United States v. Jackson* (1968), 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209; *Commonwealth v. Opara* (1976), 240 Pa. Super. 511, A.2d 305; *Simmons v. James* (D. Kan. 1979), 467 F. Supp. 1068, *aff'd, Olson v. James* (10th Cir. 1979), 603 F.2d 150. See also Com-

ment, *Charging Costs of Prosecution to the Defendant,* 59 Geo. L.J. 991 (1971); Comment, *Reimbursement of Defense Costs as a Condition of Probation for Indigents,* 67 Mich. L. Rev. 1404 (1969).

Accordingly, we hold that section 110—7(g) is invalid as violative of the equal protection and due process clauses of the United States and Illinois constitutions and we reverse the order of the appellate court.

*Order reversed.*