THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS M. BURROWS, JR., Defendant-Appellant.

Fourth District   No. 4—88—0473

Opinion filed May 25, 1989.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard L. Broch, State's Attorney, of Tuscola (Kenneth R. Boyle, Robert J. Biderman, and Michael K. Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

On November 23, 1987, a criminal information was filed in the circuit court for Douglas County against the defendant Carlos M. Burrows. After a jury trial, the defendant was found guilty on January 29, 1988. The trial court denied the defendant's post-trial motions and ordered the defendant's bond to be applied to reimbursing the county for legal services furnished by the public defender. The defendant was sentenced on June 22, 1988. Defendant argues on appeal the State failed to prove the defendant guilty beyond a reasonable doubt and erred in ordering reimbursement to the county for legal services. We disagree and affirm the circuit court.

The testimony at trial showed Melba Johnson and Vera Long were the caretakers of their mother's unoccupied home while she resided at a local nursing home. Johnson testified she checked the residence on the morning of October 28, 1987, and found nothing unusual. When Long arrived on October 31, 1987, however, she found the house in disarray and many items missing. Johnson and Long identified items recovered from the defendant's family home as some of those missing

items. These included sewing items, antique dolls, and a suitcase.

Rick Hossler, husband of a separately tried codefendant, Patti Hossler, testified for the prosecution. He stated he returned home from work on the morning of October 29, 1987. Present in the home were Patti, the defendant, the defendant's brother Bill Burrows, and Bill's girlfriend, Sherry. The Hossler home was located only two doors away from the burglarized house. On a couch in the living room were several cardboard boxes containing a suitcase, a tool box, a clock, and other items. Rick Hossler went to bed and, when he awoke several hours later, the boxes were gone and only the suitcase, the tool box, and the clock remained. On November 3, Patti Hossler left her husband and went to reside with the defendant. On that date, Rick Hossler took the items that had been left and disposed of them in a rural area outside of town. He contacted the police on November 7, indicating he had information on the burglary.

Sergeant Lou Ann Reed, of the Villa Grove police department, testified Mr. Hossler contacted her for the second time on November 20 and stated he knew of a residence where items connected with the burglary could be located. He also referred to the items he had disposed of outside of town. On November 21, the police obtained a search warrant for defendant's residence, his parents' home. Sergeant Reed testified she located some sewing items, sewing machine drawers, a suitcase, and several antique dolls at the home during the search.

Defendant's mother testified her son had spent the evening of October 28 with her and family friends. She also stated Rick Hossler had brought her the dolls, suitcase, and sewing items the day after Halloween. Defendant's father testified that on November 1, Rick Hossler had brought over the items in question and gave them to his wife.

Amy Strunk, the 15-year-old daughter of Rick and Patti Hossler, testified that on the evening of October 28 or early morning of October 29, she was sleeping on a couch in the living room of the family home. At one point she woke up and noticed boxes in the kitchen. She stated her mother, the defendant, Bill Burrows, and Sherry were in the kitchen at the time. She could not identify the boxes or their contents.

The defendant testified on his own behalf and denied any knowledge of the crime. He claimed Rick Hossler brought the stolen items to his parents' home. The defendant stated he thought at the time Rick's actions were unusual because the men had quarreled as a result of Patti leaving Rick and moving in with the defendant.

On January 29, 1988, the jury returned a guilty verdict against the defendant for burglary. On March 2, 1988, the court heard posttrial motions, and Price, a public defender, tendered a motion to withdraw as counsel for the defense. The court granted the motion, and Lerner, a privately retained attorney, entered his appearance for the defendant.

On April 4, 1988, the court held a hearing to determine reimbursement to the county for the services rendered by the public defender. The public defender testified as to the time spent in preparation and at trial in the defendant's case. The State requested the court to take judicial notice defendant had posted a $1,000 cash bond and had obtained private counsel. No evidence was presented as to the source of the money for the bond or attorney fees. At the conclusion of the hearing, the court ordered the defendant to reimburse the county in the amount of $1,178.50 and applied the defendant's cash bond for this purpose.

The court held a sentencing hearing on June 22, 1988, and the defendant was sentenced to five years in the Department of Corrections with credit for time served. On his own motion, the defendant was found indigent for the purposes of this appeal, and the office of the State Appellate Defender was appointed to represent him. A notice of appeal was filed on June 24, 1988.

Defendant initially argues there was no evidence to directly connect him with the crime and his conviction came about through the improper use of a legal presumption. The legal presumption in question here is contained in Illinois Pattern Jury Instructions, Criminal, No. 13.21 (2d ed. 1981) (IPI Criminal 2d). This instruction provides when a defendant has exclusive possession of recently stolen property and there is no reasonable explanation of his possession, the jury may infer the defendant obtained the property by burglary.

■ The application of this presumption is governed by *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160. In that case, the Illinois Supreme Court held the employment of a permissive presumption was allowed where (1) there was a rational connection between the recent possession of property stolen in the burglary and the defendant's participation in the burglary; (2) his guilt of burglary is more likely than not to flow from his recent unexplained and exclusive possession of burglary proceeds; and (3) there is evidence corroborating the defendant's guilt. It is necessary therefore to consider each of these three requirements in regard to facts of the case before us.

As in *Housby*, there is no direct evidence to connect the defend-

ant here with the actual burglary. According to the testimony of Amy Strunk, on the afternoon of October 28 she had a conversation with her mother concerning the house two doors away from her own, the house burglarized by the defendant. She stated that later that night, as a card game between her mother, the defendant, Bill Burrows, and Sherry took place, she heard discussion about whether the house was empty. Later yet, she entered the kitchen, where she found the same people and a number of cardboard boxes. When she awoke on the morning of the 29th, after her father had returned home, some of the items remained in the house, but others had been taken away. Rick Hossler testified the boxes were around the house in the early morning of the 29th when he returned home. He specifically recalled seeing a suitcase, the tool box, and a clock. These items were later identified as having been stolen from the house in question.

This testimony provides a sufficient basis to fulfill the first prong of the *Housby* test. There is a rational connection between the fruits of a recent burglary and the defendant's participation in it. Here, there is a showing during the time frame when the crime took place, the defendant and others, while located only two doors away from the house in question, discussed the fact the house was empty. Only a few hours later at the Hossler home, boxes of items, some of which are later identified as having been taken from the burglarized home, appear. Defendant's close proximity to the scene of the crime during the time when the crime was known to have occurred, the discussion concerning the burglarized house in his presence, and the appearance of items identified as having come from the house provide a sufficient rational basis to show the connection between the crime and defendant's participation.

■ The next prong of the *Housby* test requires the defendant's guilt to be more likely than not to flow from his recent unexplained and exclusive possession of burglary proceeds. Joint possession with others can be exclusive possession for purposes of determining whether defendant's unexplained and exclusive possession of recently stolen property was the result of a burglary. (*People v. Ross* (1981), 103 Ill. App. 3d 883, 431 N.E.2d 1288.) The fruits of the burglary here appeared in defendant's possession late on October 28 or early October 29. While the exact hour of the crime cannot be fixed, it was a matter of hours from the occurrence to the appearance of the stolen goods in defendant's possession. Defendant argues *Ross* held the lapse of nine hours as too great to allow presumption that the defendant was involved in the burglary. In *Ross*, the court found this passage of time was too great where the only connection of the defendant to the

burglary was possession of the stolen goods. Here, the evidence shows that after 6 p.m. on October 28, there was conversation about the unoccupied house two doors away. When Amy Strunk woke up after midnight and entered the kitchen where defendant was, there were boxes of items she had not seen earlier.

The focus of *Ross* was not establishing a bright-line rule concerning the lapse of time between a crime and the discovery of stolen goods in the possession of the defendant, but on the factors which would make it unlikely the defendant was an innocent victim of circumstance. In *Ross*, there was nothing to connect the defendant to the crime save possession of the stolen goods. There, the court was unwilling to accept a presumption where there was the possibility of a substantial amount of time having passed between the crime and the arrest because this greatly increased the possibility the defendant could have acquired the goods by a means other than burglary. Also, in *Ross*, the defendant had presented an explanation which, while not entirely plausible, was supported by some evidence.

In this case, there is also the possibility several hours passed between the crime and the time when Strunk saw the defendant with the stolen goods. Here, however, defendant's only explanation concerning his possession of the goods was to deny he was present at the Hossler home on the night of the burglary, a position flatly contradicted by the State's witnesses. In regard to how the stolen items came to be at his parents' home, where the defendant resided, the defendant presented the testimony of his parents that the items were a gift from Rick Hossler. Defendant's explanation, however, did not account for the appearance of the stolen goods in his possession with others in the Hossler home on the evening of the 28th or morning of the 29th. Hossler testified he was working at this time, and the witness Amy Strunk did not testify he was present in the home at the time. It is therefore more likely than not the defendant's guilt flows from his connection with the possession of the stolen goods.

■■ ■ The final prong of the *Housby* test is corroborating evidence. Defendant contends there is no substantial corroborating evidence in this case. However, there is defendant's presence near the site of the crime during the time when it occurred, his presence in the Hossler home when the situation of the house two doors away was discussed at a time close to when the stolen goods appeared, his possession of the goods and their disappearance with his departure, and his possession of them three weeks later at his parents' home. Although defendant is correct that the testimony of some of the witnesses is directly contradictory, it is for the jury to resolve the contra-

dictions in the evidence and to assess the veracity of the witnesses. (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) We find the jury had before it sufficient evidence to support a presumption of guilt based on the defendant's possession of the stolen items.

The defendant also objects to the recoupment order of the court, arguing it did not consider his ability to pay. On April 4, 1988, the court held a hearing on reimbursement to the county for legal services rendered to the defendant by the public defender. The defendant and defense counsel were both present on March 2, 1988, when the court set the hearing date but both defendant and his attorney failed to appear at the hearing. At the hearing, the State introduced evidence of the number of hours spent in and out of court on the defendant's case, the normal rates of reimbursement, and the actual hourly cost to the county of representation. The State also asked the court to take notice of the defendant's $1,000 bond. The court then entered an order requiring the defendant to reimburse the county in the amount of $1,178.50.

On August 24, 1988, a hearing was held on the State's motion to apply defendant's bond to the reimbursement order. Neither the State nor the defense presented any evidence. Defense counsel stated the defendant's bond money had been provided by his parents. No objections were made to the order of recoupment, however, and defense counsel acknowledged the matter was at the discretion of the court. The court found no evidence had been submitted on the issue of the source of defendant's bond. The court then ordered the money due the county for costs and the order of recoupment be taken from the defendant's bond.

■ On appeal, the defendant questions the failure of the trial court to consider his ability to pay the costs of his defense. This court has previously held that when making an order of recoupment, the court must consider all the relevant factors: the affidavit and financial circumstances of the defendant, the time spent representing the defendant, the expenses reasonably incurred, the nature of the services provided, and the statutory limitations. (Ill. Rev. Stat. 1985, ch. 38, par. 113—3.1.) The court must create a complete record that it considered the relevant factors. *People v. Terry* (1988), 170 Ill. App. 3d 484, 524 N.E.2d 685.

■ We have, on occasion, declined to apply the waiver rule to cases involving recoupment orders under section 113—3.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 113—3.1). (*E.g., People v. Brady* (1988), 172 Ill. App. 3d 1079, 527 N.E.2d 590.) We did so to remedy what we perceived as confusion at the trial

level concerning the rights of defendants, to emphasize and clarify the standards of recoupment orders, and to deal with the number of appeals raising this issue. This court has sufficiently set forth the requirements of a proper recoupment order, particularly in *Brady* and *Terry*. A careful reading of previous opinions makes clear that in declining to apply the waiver rule, this court was exercising its discretion, not creating a blanket rule involving all cases where recoupment is an issue. This court has not hesitated to apply the waiver rule where appropriate in reviewing recoupment orders. (See *People v. Van Ostran* (1988), 168 Ill. App. 3d 517, 522 N.E.2d 851.) It is solely within the discretion of the reviewing court to consider alleged errors not raised or presented at trial, even if such errors affect substantial rights. (*People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307.) A nonjurisdictional issue, even one of a constitutional character, which has not been properly preserved for review will not be considered on appeal. *People v. Pettigrew* (1984), 123 Ill. App. 3d 649, 462 N.E.2d 1273.

The defendant here had two hearings at which he had the opportunity to object to the order of recoupment or to present any additional evidence to the court. Both defendant and defense counsel failed to appear at the first hearing. They essentially did nothing at the second hearing. Adequate notice of the hearing and its subject matter was given in both cases. It is an inappropriate use of judicial resources to permit a defendant who has been provided ample opportunity to present objections and evidence to the trial court to sit silently, do nothing, and then be allowed to raise matters on appeal which should have been presented to the trial court at the first recoupment hearing.

■ For this reason, the defendant has waived any error in the recoupment order by not raising any objections in the trial court. While we recognize the trial court here did not create a record indicating it had considered all relevant factors, we also note the defendant raised no objections to the order at the hearing. The defendant's arguments concerning the recoupment order are waived and we affirm the decision of the circuit court.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.