THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM L. BAKER, Defendant-Appellant.

Fourth District   No. 4—89—0462

Opinion filed March 28, 1990.—Rehearing denied April 27, 1990.

KNECHT, P.J., specially concurring.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Roger Simpson, State's Attorney, of Monticello (Leonard R. Rumery, Assistant State's Attorney, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, William L. Baker, was convicted after a jury trial of unlawful restraint and battery (Ill. Rev. Stat. 1987, ch. 38, pars. 10—3, 12—3). Defendant appeals his convictions, claiming that the prosecutor's remarks during closing argument deprived him of a fair trial. In addition, defendant maintains that the trial court's recoupment order requiring him to pay $200 to the county for the services of his public defender must be vacated.

We affirm.

Defendant contends that the prosecutor's closing argument denied him a fair trial because the prosecutor (1) expressed his personal opinion, and (2) accused the defendant of "fogging" the issues during defendant's closing argument.

With regard to the first allegation, defendant argues that the following passages constitute improper argument:

"That substantiates and provides the proof, I believe, beyond a reasonable doubt, as her testimony is uncontroverted in this case, on the battery charge. ***

* * *

Judge Shonkwiler is going to read to you certain instructions that you have already indicated that you will follows [sic]. ***

Number one is unlawful restraint. 'A person commits the offense of Unlawful Restraint when he knowingly and without legal authority, detains another person.' If ever there was a situation where a person was detained, I think it was demonstrated by the testimony of Theresa Taylor. *** I think it could be reasonably inferred from the evidence, she feared for herself and the safety of her young child, and yet she was not allowed to remove herself from that situation."

In his rebuttal argument, the prosecutor made the following remarks, which defendant again claims are improper argument:

"I live on the west side of Monticello, and from time to time I drive into town early in the morning, and there is a fog over our town, over our community, and as the sun gets higher, the fog burns and the outline of the city becomes clearer. I think [defense counsel] is attempting to drop a fog on this particular trial, and the facts when he says, hey, after all this is just kind of a domestic dispute, after all they have kind of forgiven each other and we should just let them go on and live their lives.

\*\*\*

The fact that we are dealing with two people who continue to live together, commonly, where it is commonly known as a domestic dispute is not relevant. It is a fog, and I submit you should not consider that when weighing the evidence in this particular case."

■■ Defendant, however, failed to object to the prosecutor's closing argument at trial. Unless the prosecutor's remarks constitute plain error, defendant has waived consideration of this issue on appeal. (*People v. Hall* (1986), 114 Ill. 2d 376, 418, 499 N.E.2d 1335, 1353, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) Because we do not find the prosecutor's closing argument to be inappropriate, we find no plain error.

■■ A prosecutor may state an opinion which is based on the record or on a legitimate inference derived from the record. (*People v. Johnson* (1987), 119 Ill. 2d 119, 143, 518 N.E.2d 100, 111, *cert. denied* (1988), 486 U.S. 1047, 100 L. Ed. 2d 629, 108 S. Ct. 2027.) In the present case, the prosecutor expressed opinions as to the proof offered against the defendant. These opinions were legitimate inferences based on the trial record. While it might be good practice for prosecutors to refrain in argument from using sentences beginning with, "I believe" or "I think," we reject defendant's argument that any time a prosecutor does so error results.

■■ Defendant similarly failed to object to the prosecutor's allegation that defendant was "fogging" the issues during his closing arguments. Once again, these comments will be considered on appeal only if they constitute plain error; and, once again, because these remarks are not improper, no error, much less plain error, is present.

While prosecutors must refrain from personal attacks on *defense counsel*, they need not refrain from attacking *defendant's case* as presented in the defendant's closing argument. This distinction is particularly important where, as here, the prosecutor's argument is mere rhetorical flourish.

Our supreme court recently found a prosecutor's closing argument to be not prejudicial in a capital case where the prosecutor's descriptions of the defendant's argument were much harsher than the rather mild metaphors used in the present case. See *People v. Franklin* (1990), 135 Ill. 2d 78, 112 (prosecutor's characterization of defendant's closing argument as "shocking," "bunk," "abominable," and "insulting" did not prejudice defendant).

Defendant also claims that the trial court's order under section 113—3.1 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev.

Stat. 1987, ch. 38, par. 113—3.1), requiring him to pay the county $200 for the services of the public defender, was improper. The trial court ordered that this $200 assessment be taken from the $300 cash bond defendant had previously posted. Defendant argues that the court, prior to the entry of the order, failed to consider his ability to pay the $200.

■ We first note that no objection was raised by the defendant on this or any other ground to the payment order entered by the trial court. Accordingly, we find ourselves once more in a position in which a defendant seeks to have this court review and reverse actions by the trial court which the defendant is questioning for the first time on appeal. Because of defendant's failure to object to this alleged procedural deficiency at any point during the trial court proceedings, defendant has waived this issue on appeal unless the plain error rule applies. See 107 Ill. 2d R. 615(a).

Among the last cases in which the supreme court discussed the plain error rule are *People v. Szabo* (1986), 113 Ill. 2d 83, 497 N.E.2d 995, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330, and *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274. Interestingly, both cases involved defendants who received the death penalty, and in both cases the supreme court refused to apply the plain error rule with regard to unobjected-to issues being raised for the first time on appeal. (*Szabo*, 113 Ill. 2d at 94-96, 497 N.E.2d at 999-1000; *Enoch*, 122 Ill. 2d at 198-99, 522 N.E.2d at 1135-36.) These issues arguably affected the guilty verdicts or the imposition of the death penalty or both. In *Enoch*, the supreme court went even further and held that merely objecting at the trial level was not enough to preserve trial court errors for appeal; a post-trial motion had to be filed as well. *Enoch*, 122 Ill. 2d at 185-92, 522 N.E.2d at 1129-32.

In *Szabo*, the supreme court described the plain error rule as " 'a narrow and limited exception to the general waiver rule' [citation], to be invoked only when the error alleged is 'so substantial as to deprive defendant of a fair trial' [citation]." (*Szabo*, 113 Ill. 2d at 94, 497 N.E.2d at 999.) Similar language was used in *Enoch*. *Enoch*, 122 Ill. 2d at 198-99, 522 N.E.2d at 1135-36.

■ Given these recent holdings by the supreme court in these death penalty cases, there is no basis for the defendant's argument that the plain error rule is applicable to issues on appeal concerning this recoupment order. Even if technical deficiencies were present in the procedures used by the trial court when it entered the recoup-

ment order under section 113—3.1 of the Code, those deficiencies can hardly be "so substantial as to deprive defendant of a fair trial."

If the defendant does not bother to complain of procedural or technical deficiencies at the trial level, he should be barred from doing so on appeal.

■■ The plain error rule means precisely what the supreme court says it means. It is to be invoked only when the error alleged is so substantial as to deprive a defendant of a fair trial. It is not a "catch-all" provision permitting the supreme court, much less this court, to review any order or judgment of the trial court simply because this court may think the trial court erred.

In the context of the present case, not only is the plain error rule not applicable, it has nothing whatsoever to do with whether defendant received a "fair trial." He sat on his rights at the trial level; he should not be permitted to challenge the court's recoupment order at this stage.

In so holding, we are not unmindful of the recent decision of this court in *People v. Atwood* (1990), 193 Ill. App. 3d 580, but we believe *Atwood* to be the exceptional case and distinguishable on its facts. In *Atwood*, this court considered arguments concerning section 113—3.1 of the Code that defendant raised for the first time on appeal. One of the distinguishing features in *Atwood* was the circumstance that defense counsel in that case would likely be paid out of whatever sum the court ordered the defendant to pay for reimbursement of court-appointed counsel.

"[I]f here defense counsel was required, in order to preserve error, to take some step in the trial court to point out such error, we are most reluctant to impose a waiver when that counsel appears so likely to have a personal interest in the amount of reimbursement ordered." *Atwood*, 193 Ill. App. 3d at 591.

In *Atwood*, this court also made reference to *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, a case in which the trial court, in pronouncing sentence, revealed that it gave consideration to an improper aggravating factor. As the primary aggravating factor in that voluntary manslaughter case, the trial court found that defendant's conduct caused terrible harm to the victim. The defense made no response in the trial court, but raised the issue on appeal. The supreme court held the issue to be not waived. In writing for the court, Justice Ryan noted that it was not necessary for counsel to interrupt the judge and point out that he was considering wrong factors in aggravation, "especially in light of the argument that had preceded the ruling." (*Saldivar*, 113 Ill. 2d at 266, 497 N.E.2d at

1142.) The argument deemed by the supreme court to be especially significant was defense counsel's pointing out, immediately prior to the trial court's consideration of the improper aggravating factor in imposing sentence, that there is always going to be a death in a case of voluntary manslaughter.

In *People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855, the supreme court had before it a case requiring an interpretation of section 5—8—1(b) of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(b)), that read as follows:

> " 'The sentencing judge in each felony conviction shall set forth his reasons for imposing the particular sentence he enters in the case, as provided in Section 5—4—1 of this Code.' " *Davis*, 93 Ill. 2d at 157-58, 442 N.E.2d at 856.

In *Davis*, which involved consolidated appeals, the trial court failed to set forth its reasons for the felony sentence imposed. The issue before the supreme court was whether defendant's sentence should be vacated and a new sentencing hearing held. The supreme court answered in the negative, holding section 5—8—1(b) of the Unified Code to be merely directory, not mandatory. In explaining this decision for the majority of the court, Justice Ryan, the same justice who delivered the court's opinion in *Saldivar*, stated the following:

> "Here, the defendants failed to request a statement of reasons for the sentences given. The statute not being mandatory, there was no independent duty upon the court to give a statement of reasons. Instead, the right is purely personal to the defendants and thus may be waived. Accordingly, *we hold that where a defendant fails to request a statement of reasons for a particular sentence, the issue is waived.*" (Emphasis added.) *Davis*, 93 Ill. 2d at 162-63, 442 N.E.2d at 858.

■ The above language suggests that the "burden" of interrupting a sentencing judge or addressing the judge immediately after the judge has imposed a sentence (or entered a recoupment order) is not thought by the supreme court to be unreasonable. This analysis of *Davis* lends further support to our conclusion that the decision of this court in *Atwood* should be limited to the unusual facts present in that case.

In *People v. Burrows* (1989), 183 Ill. App. 3d 949, 955-56, 539 N.E.2d 842, 846, this court noted that it had declined to apply waiver rules to cases involving recoupment orders under section 113—3.1 of the Code in order to remedy any confusion at the trial level concerning the application of the then-new recoupment statute. However, section 113—3.1 of the Code became effective July 1, 1982,

and the reasons for our not applying waiver rules have dissipated with time. As we stated in *Burrows*,

> "It is an inappropriate use of judicial resources to permit a defendant who has been provided ample opportunity to present objections and evidence to the trial court to sit silently, do nothing, and then be allowed to raise matters on appeal which should have been presented to the trial court at the first recoupment hearing." *Burrows*, 183 Ill. App. 3d at 956, 539 N.E.2d at 846.

Even if we were to reach the merits, we note that defendant's position is groundless. Defendant claims that a hearing must be held to determine whether the recoupment order was reasonable. Yet, at the time that order was entered in this case, the judge who entered it was the same judge who presided over the multiple pretrial hearings, the one-day felony jury trial, the hearing on the post-trial motion, and the sentencing hearing. At the conclusion of the sentencing hearing, the judge determined that $200 of the $300 cash bond the defendant had posted should be used under section 113—3.1 of the Code to pay the county for the services it provided to defendant of court-appointed counsel. The trial court can take judicial notice of its own records and properly enter a recoupment order based thereon without any further hearings to determine whether it was a "reasonable sum" where, as here, no legitimate question as to that sum's reasonableness can be raised. It would simply be ridiculous to require a hearing under these circumstances to determine whether $200 for the services of counsel was appropriate.

■ Defendant also argues that the court was obligated to conduct a hearing before entering an order under section 113—3.1 of the Code because the bond money may have been borrowed. Earlier in this opinion, we noted that it is the defendant's burden to call to the trial court's attention any errors or technical deficiencies in proceedings under this statute resulting in the imposition of a recoupment order. That holding applies to this claim as well. The court had before it a $300 cash bond posted to secure the defendant's release. If the defendant wanted the court to give "special consideration to the interests of relatives or other third parties who may have posted" that bond (see section 113—3.1(c) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 113—3.1(c))), he should have said so.

■ We note that the provisions of section 113—3.1(c) of the Code, concerning the interests of relatives or third parties, are entirely discretionary with the trial court. If the trial court thinks it appropriate, it may use all of the cash bond posted to pay a recoup-

ment order, even if the money was borrowed from or posted by relatives or third parties, and even if some financial inconvenience or hardship might befall them as a result of the court's using this money to pay the recoupment order. It should be remembered that the people who post bond money on behalf of a defendant are *volunteers*; no one has ever been drafted into that position. Furthermore, the judicial system does not become the guarantor of the funds posted on behalf of those who *choose* to post bond to secure the release of a defendant. In fact, it is they who become the *voluntary* guarantors for the appearance of the defendant whenever that appearance is required by the court, risking everything they posted to secure his release if he fails to comply. Ill. Rev. Stat. 1987, ch. 38, par. 110—8(g).

Relatives and other third parties who post a cash bond have no greater *claim* under section 113—3.1(c) of the Code to the funds posted when the court imposes a recoupment order than they do when the court imposes a fine or an order of restitution. All that section 113—3.1(c) of the Code says is that a trial court *may*, but *need not*, give special consideration to their interests.

To remove any uncertainty about the law concerning cash bonds that relatives or other third parties posting them may have, the legislature recently amended section 110—7(a) of the Code, dealing with the deposit of bail security, by adding the following:

"The clerk of the court shall provide a space on each [bail bond] form for a person other than the accused who has provided the money for the posting of bail to so indicate and a space signed by an accused who has executed the bail bond indicating whether a person other than the accused has provided the money for the posting of bail. The form shall also include a written notice to such person who has provided the defendant with the money for the posting of bail indicating that if the defendant fails to comply with the conditions of the bail bond, the court shall enter an order declaring the bail to be forfeited and may be used to pay costs, *attorney's fees*, fines or other purposes authorized by the court." (Emphasis added.) Pub. Act 86—337 eff. Jan. 1, 1990 (1989 Ill. Laws 2287), amending Ill. Rev. Stat. 1987, ch. 38, par. 110—7(a).

We view this new statutory provision as a codification of the views we expressed in *People v. Ray* (1984), 130 Ill. App. 3d 362, 471 N.E.2d 933, a case in which the court imposed a fine of $1,500 and ordered it paid out of a $2,500 cash bond that had been posted

by the defendant to secure his release. In affirming the trial court, we stated the following:

"[T]he sum of $2,500 had been posted by [defendant] as a 10% bond deposit. Those proceeds were available for fine payment regardless of who may have furnished the money. *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194." *Ray*, 130 Ill. App. 3d at 368, 471 N.E.2d at 172.

Citing *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56, defendant also argues that the trial court erred by not conducting an inquiry into defendant's personal ability to pay the $200 recoupment order. At first blush, this argument strikes us as most peculiar since, on this record, there can be no doubt that defendant possessed the "ability" to pay the recoupment order—that is, the $200 recoupment order was paid by court order out of the $300 cash bond previously posted by defendant. While it is true that the supreme court in *Cook* said it had never adopted any presumption that, "the posting of bail, without more, was a sufficient indicium of ability to pay wholly or partially for legal counsel" (*Cook*, 81 Ill. 2d at 181, 407 N.E.2d at 59), those remarks, understood in context, lend no support to defendant's argument.

In *Cook*, the sole issue before the court was the constitutionality of then-section 110—7(g) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g)), which read as follows:

"Whenever a defendant who has been admitted to bail utilizes the services of a public defender or other appointed counsel, the amount deposited may be used to reimburse the county funding the legal services." (*Cook*, 81 Ill. 2d at 180, 407 N.E.2d at 58.)

The supreme court held this statute to be invalid because it violated both the equal protection and the due process clauses of the United States and Illinois Constitutions. (*Cook*, 81 Ill. 2d at 187, 407 N.E.2d at 61.) It violated the equal protection clause because it singled out for possible reimbursement only those indigent defendants who had posted bail. (*Cook*, 81 Ill. 2d at 181, 407 N.E.2d at 58-59.) It violated the due process clause because section 110—7(g) of the Code did not on its face provide for a hearing before a recoupment order was entered and, in that very case, no hearing was ever held. Instead, the appellate court directed the trial court to deduct a sum representing the reasonable value of appointed counsel's service from the cash bond defendant had posted. *Cook*, 81 Ill. 2d at 185-86, 407 N.E.2d at 60-61.

Readily apparent from this analysis is that the discussion in *Cook*

about whether "the posting of bail, without more, was a sufficient indicium of ability to pay wholly or partially for legal counsel" (*Cook*, 81 Ill. 2d at 181, 407 N.E.2d at 59) is *obiter dicta*, unnecessary to the constitutional holding ultimately rendered by the court. Not only is this discussion *dicta*, it is wholly unconnected to the issue for which defendant in the present case wishes to cite it, namely, does the posting of a cash bond demonstrate a defendant's "ability" to pay a recoupment order from all or part of that bond? The recoupment statute at issue in this case, section 113—3.1 of the Code, was not even in existence at the time of the *Cook* decision. Instead, the supreme court in *Cook* was addressing a then-recurring problem, namely, the failure of the trial courts either to appoint counsel or to provide free transcripts for indigent defendants solely because those defendants had posted a cash bond. This focus of the supreme court's discussion in *Cook* is most clearly shown by the three citations appearing at the end of the paragraph in question in *Cook*. Those citations are to *People v. Pankoff* (1978), 70 Ill. 2d 69, 374 N.E.2d 182; *People ex rel. Baker v. Power* (1975), 60 Ill. 2d 151, 330 N.E.2d 857; *People v. Eggers* (1963), 27 Ill. 2d 85, 188 N.E.2d 30. See *Cook*, 81 Ill. 2d at 181-82, 407 N.E.2d at 59.

In *Eggers*, defendant posted a $350 cash bond and was released. Subsequently, defendant asked for court-appointed counsel, and his request was denied. The supreme court reversed, stating the following:

"From the statements of the court it is clear that an attorney was not appointed to defend the defendant solely because the defendant had spent $350 for a bail bond. The trial judge stated that *ordinarily* the public defender would have been appointed if this had not been done. The trial court's action in this regard was erroneous." (Emphasis in original.) *Eggers*, 27 Ill. 2d at 88, 188 N.E.2d at 32.

In *Baker*, the supreme court entered a supervisory order, citing only *Eggers*. The court stated the following:

"It appears from the papers on file in this cause that petitioner's request for the appointment of counsel has been denied without a determination of defendant's indigency, on the ground that petitioner is at liberty on bail. This ruling was erroneous." *Baker*, 60 Ill. 2d at 152, 330 N.E.2d at 857.

In *Pankoff*, defendant's family posted $6,000 cash on a $60,000 appeal bond. The trial court denied defendant's request for a free transcript for his appeal. The supreme court again entered a supervisory order, citing *Baker*, and directing the trial court to consider

defendant's motion for a free transcript without regard to the fact that defendant is at liberty on bail. *Pankoff*, 70 Ill. 2d at 70, 374 N.E.2d at 182.

The language of *Cook,* cited by defendant in the present case, was simply a reaffirmation that an otherwise indigent defendant could not be denied court-appointed counsel or a free transcript because he or someone on his behalf had posted a cash bond. This language, however, addresses *no* issue connected with the assessment of a recoupment order under section 113—3.1 of the Code. *By definition*, a defendant against whom a recoupment order is assessed already has had the benefits of court-appointed counsel. "Whenever *** the court appoints counsel to represent a defendant, the court may order the defendant to pay *** a reasonable sum to reimburse either the county or the State for such representation." Ill. Rev. Stat. 1987, ch. 38, par. 113—3.1(a).

■■■ Consistent with our analysis of *Cook* and the cases cited therein, we now hold that a cash bond posted to secure the release of a defendant is definitive evidence of his "ability to pay" a recoupment order as long as the recoupment order does not exceed the amount of the cash bond. By "definitive evidence," we mean the mere act of defendant's posting a cash bond *does*, in itself, demonstrate an "ability to pay" a recoupment order, at least to the extent the order does not exceed the cash bond. No further evidence concerning the defendant's "ability to pay" under these circumstances is required.

Because this holding discusses only the defendant's *personal* financial concerns, it is in no way inconsistent with the provisions of section 113—3.1(c) of the Code, which state that the trial court *may* give special consideration to the interests of relatives or other third parties who may have posted the cash bond on defendant's behalf.

To the extent that this court's decision in *People v. Brady* (1988), 172 Ill. App. 3d 1079, 1086, 527 N.E.2d 590, 595, in its analysis of *Cook* is inconsistent with the holding just stated, it is overruled.

In conclusion, we repeat that if the defendant somehow was going to personally suffer some great financial burden because of this recoupment order, that should have been called to the attention of the trial court. This requirement is particularly appropriate in a case where, as here, the court specifically addressed the defendant at the time the order was entered and asked him if he had any comment concerning the $200 order. The defendant said he did not.

Apparently, on appeal defendant has found his tongue. He is too late.

For the reasons stated, the judgment and sentence imposed by the court upon the jury's verdict, as well as the recoupment order, are affirmed.

Affirmed.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE KNECHT, specially concurring:
I concur, and write only to comment on the impact of this decision on waiver and *People v. Brady* (1988), 172 Ill. App. 3d 1079, 1086, 527 N.E.2d 590, 595. As the author of several decisions involving recoupment, and whether waiver should be applied, I fully agree with the decision here. Any confusion concerning the rights of defendants and the standards to be met in recoupment orders should by now have been clarified.

As in *People v. Burrows* (1989), 183 Ill. App. 3d 949, 955-56, 539 N.E.2d 842, 846, it is inappropriate to permit a defendant to sit silently, and then raise this issue on appeal. Trial courts have many hoops to jump through. In future, the defendant concerned about recoupment must point out the hoop or be barred from criticizing the trial judge's form. It might also help if State's Attorneys would assist trial judges in making a complete record instead of perfunctorily participating in recoupment proceedings.

As for *Brady*, I agree its analysis of *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56, is inconsistent with our decision here. To that extent, it should be overruled. The act of posting cash bond is evidence of an "ability to pay" a recoupment order. The trial court may elect to handle recoupment in a different fashion, but it is incumbent on *both* the defendant and the prosecution to assist in achieving an appropriate and fair result.