THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELA WEBB, Defendant-Appellant.

Third District    No. 3—94—0844

Opinion filed December 7, 1995.

Melvin Hoffman, of Hoffman, Mueller & Creedon, P.C., of Ottawa, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The issue in this appeal is whether the trial court erred in entering an order of reimbursement for services of the public defender. The court reimbursed La Salle County from the cash bond posted by a third party for the release of defendant Angela Webb pending trial. For reasons that follow, we reverse.

Defendant was charged with unlawful delivery of a controlled substance (cocaine) (720 ILCS 570/401(c)(2) (West 1992)). Bail was set at $15,000, and a warrant for her arrest was issued. Upon her arrest, defendant filed an affidavit of assets and liabilities showing no income, assets, liabilities or resources. The court found her indigent and appointed the La Salle County public defender to represent her.

Defendant pleaded not guilty and moved for a reduction of bail. The motion was denied. On May 14, 1994, Ronald Crawford posted the required $1,500 cash bond to secure defendant's release. The matter was tried by a jury and resulted in an acquittal. The court entered judgment on the verdict and ordered that the bond money be used to reimburse the county for the public defender's services.

Defendant and Ronald Crawford, represented by private counsel, subsequently moved to vacate the reimbursement order. The motion was granted, and the matter was set for a hearing.

At the hearing, defendant testified that she had no income or assets. She lived with her mother and four children. She stated that she did not owe Crawford any money and no one owed her any. She explained that Crawford was her boyfriend.

Assistant State's Attorney Brian Towne then testified that the reimbursement order was entered on the court's own motion. He further testified that in the cases he had prosecuted there had never been an instance where a reimbursement order for public defender services had been entered against an indigent defendant who had not posted bond. Towne said he was handling about 175 cases and that reimbursement orders had been entered when bond money was available in about 50 cases without evidentiary hearings. He testified that in this case Public Defender Dan Bute stood mute and did not object to the reimbursement order.

Bute testified that it was the custom in the county for the County

Board to augment the salaries of the attorneys in the public defender's office with one-half of the amount recovered by the county through reimbursement orders. He estimated that each attorney received about $4,000 per year pursuant to this practice. Bute stated that he did not object to the reimbursement order in this case and he had never advised defendants of their right to a hearing on their ability to pay for his services. The court then inquired how many hours he had spent representing this defendant. Bute testified that it had been more than 21 hours and that there had been no other costs.

Following closing arguments, the court first found that defendant had no ability to pay. Turning to the interests of Crawford, the court noted the reverse side of the standard bail bond form, which contains the following statement:

"When the person charged has been discharged from all obligations in this case, the security posted shall be distributed as follows: A. When 10% bond has been posted, and the case has been disposed by dismissal or by final order of the Court, the 90% of the amount posted will be available for refund to the person charged, or to apply to any fines, costs, fees, penalties or judgments assessed in the case. 10% of the amount posted, but not less than $5.00, will be retained as bail bond costs."

The court then observed that defendant had benefited from the services of the public defender and that $1,350 was a reasonable reimbursement for 21 hours of his services. However, the court continued, it had given special consideration to the fact that the money was posted entirely from Crawford's own funds. Therefore, the court concluded, the amount of reimbursement to the county would be reduced to $800, and the balance of $550 would be refunded to Crawford.

On appeal, defendant first argues that the trial court abused its discretion in ordering reimbursement for the public defender's services. Defendant posits that her ability to raise money for bail is not evidence of her ability to pay for the services of court-appointed counsel. In support of her argument, defendant cites *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56. The State takes the opposite position, citing *People v. Baker* (1990), 195 Ill. App. 3d 785, 552 N.E.2d 421, and *People v. Nunez* (1990), 197 Ill. App. 3d 332, 553 N.E.2d 1123. Having reviewed these cases and other relevant authority, we find that the better reasoned line of cases supports defendant's position.

Prior to 1982, subsection 110—7(g) of the Code of Criminal Procedure of 1963 authorized the State to recover county expenditures for public defender services from bond deposits without a hearing (Ill.

Rev. Stat. 1981, ch. 38, par. 110—7(g)). In *Cook*, the defendant appealed from a reimbursement order on equal protection and due process grounds. The State argued, as it does in this case, that the ability to post bail indicates the defendant's financial ability to pay for the services of appointed counsel. The court rejected the State's argument, stating, "This court has never adopted any presumption \*\*\* that the posting of bail, without more, was a sufficient indicium of ability to pay wholly or partially for legal counsel. Bail may be posted with borrowed funds or by relatives or friends." (*Cook*, 81 Ill. 2d at 181, 407 N.E.2d at 59.) The court concluded that the statutory scheme then in place violated constitutional protections in that it discriminated against indigent defendants who had posted bail and, permitting no opportunity to present evidence of his financial condition, it also violated the right to procedural due process.

Decisions of this court followed the rule of *Cook* and vacated reimbursement orders entered without evidence of the defendant's ability to pay. See, *e.g.*, *People v. Brown* (1982), 107 Ill. App. 3d 742, 745, 438 N.E.2d 250, 253 ("If defendant was indigent, the mandate of *Cook* applies: if he was not a pauper then disbursement from his bail bond may be ordered in the discretion of the trial court"); see also *People v. Phillips* (1986), 150 Ill. App. 3d 531, 502 N.E.2d 80; *People v. Gutierrez* (1987), 156 Ill. App. 3d 555, 509 N.E.2d 787.

■ The reimbursement statute was subsequently reenacted. (Ill. Rev. Stat. 1983, ch. 38, par. 113—3.1 (added by Pub. Act 82—708, § 1, eff. July 1, 1982).) It currently provides for a hearing to consider a defendant's financial circumstances as well as the interests of third parties who may have posted bond money before the court may reimburse the county for the services of the public defender. The hearing may be conducted on the court's own motion or on the motion of the State, and the amount to be reimbursed may be withheld from bond money (725 ILCS 5/113—3.1(c) (West 1992)).

*Baker* and *Nunez*, which the State relies on in this case, were decided by the Fourth District of the Appellate Court under the current statutory scheme. In both cases, the trial court ordered reimbursement for appointed counsel from bond money posted by defendants who had claimed indigency. Notwithstanding both defendants' waivers of the reimbursement question, the court opted to address the merits of defendants' arguments on appeal. Rejecting the arguments, the court upheld the trial courts' orders based on a presumption of ability to pay.

The broad holding of *Baker* appears at first blush to eviscerate the rule of *Cook*:

"[W]e now hold that a cash bond posted to secure the release of

a defendant is definitive evidence of his 'ability to pay' a recoupment order as long as the recoupment order does not exceed the amount of the cash bond. By 'definitive evidence,' we mean the mere act of defendant's posting a cash bond *does*, in itself, demonstrate an 'ability to pay' a recoupment order, at least to the extent the order does not exceed the cash bond. No further evidence concerning the defendant's 'ability to pay' under these circumstances is required." (Emphasis in original.) *Baker*, 195 Ill. App. 3d at 796, 552 N.E.2d at 428.

In *obiter dicta*, the *Baker* court also suggests that bond money posted by third parties is subject to forfeiture because the current statutory scheme requires the clerk to provide notice on the bond form that bond deposits may be used to pay certain costs, including attorney fees (725 ILCS 5/110—7(a) (West 1992)). *Baker*, 195 Ill. App. 3d at 793, 552 N.E.2d at 426-27.

Following *Baker* and *Nunez*, the issue was revisited by the fifth district in *People v. Henderson* (1992), 232 Ill. App. 3d 230, 596 N.E.2d 837. In *Henderson*, as here, defendant posted bond with funds belonging to another and was represented at trial by the public defender. Without conducting a hearing on defendant's present or future ability to pay, the court ordered reimbursement for counsel's services in the amount of $1,510. The State again argued that the court's reimbursement order should be sustained because posting bond is sufficient evidence of defendant's ability to pay.

The court rejected the State's position and the broad holding of *Baker*. Confining *Baker* and *Nunez* to their facts, the *Henderson* court concluded that the statutory scheme of section 113—3.1 mandates a hearing on the reasonableness of attorney fees for the public defender. "At that hearing, the court *must consider defendant's financial circumstances to determine if recoupment is appropriate.*" (Emphasis added.) *Henderson*, 232 Ill. App. 3d at 239, 596 N.E.2d at 842.

In our opinion, the presumption adopted by the fourth district in *Baker* and *Nunez* runs afoul of the same constitutional guarantees that the court in *Cook* sought to protect when it invalidated the procedure authorized by the former reimbursement statute. Remedial legislation affording a hearing achieves nothing unless the hearing is meaningful, *i.e.*, the evidence adduced at the hearing is duly considered in reaching a decision. Accordingly, we adhere to our earlier holdings and *Henderson*, holding that section 113—3.1 mandates a meaningful hearing into the defendant's financial circumstances before any reimbursement for appointed counsel's services may be granted.

■ In this case, there is no evidence that defendant had any funds or any foreseeable ability to pay attorney fees. The bond slip discloses that the money posted belonged to Crawford, and defendant's testimony at the section 113—3.1 hearing confirmed this fact. Defendant's credibility was not questioned or challenged; in fact, the trial court declared her indigent at the reimbursement hearing. Therefore, we find that the trial court's order requiring defendant to reimburse the county $800 for the public defender's services is contrary to the manifest weight of the evidence and an abuse of discretion.

Defendant also argues that the reimbursement statute is unconstitutional as applied in La Salle County. Specifically, she argues that: (1) she and Crawford received no notice of a possible reimbursement order and no meaningful hearing; (2) the public defender labors under a conflict of interest with respect to reimbursement proceedings; (3) the statute is routinely applied without affording the defendant an opportunity to be heard on the reasonableness of fees; (4) reimbursement is routinely ordered without evidence of the county's costs for operating the public defender's office; and (5) the process offends her right to equal protection under the law.

Although not essential to our disposition of this appeal, we believe defendant's constitutional challenges merit our consideration. We therefore choose to comment briefly on the most egregious aspects of the court's reimbursement practices.

■ Initially, we reject the State's suggestion that the hearing in this case passed constitutional due process muster because Crawford never testified that any recoupment would result in a financial burden to him. This argument misses the point. A third party's financial circumstances have no relevance to the proceedings. (See, e.g., *People v. Kirkpatrick* (1992), 240 Ill. App. 3d 401, 608 N.E.2d 256.) The reimbursement statute requires that the *defendant's financial circumstances* be considered and allows for "special consideration" of *third parties' interests* in bond money. (725 ILCS 5/113—3.1(a), (c) (West 1992).) Where the evidence establishes that the defendant has no ability, present or foreseeable, to pay for counsel, there is no authority for inquiring into a third party's financial circumstances at the reimbursement hearing.

We further note that the bond form used in this case does not track the language of section 110—7(a). The form informs third-party payers only that bail may be forfeited and used for attorney fees *if the defendant fails to comply with the conditions of the bail bond.* Thus, where, as here, a defendant complies with the conditions, there is no reasonable notice that the public defender's services may be paid for out of the bond deposit.

Finally, it is difficult to imagine a more obvious conflict of interest than that created by La Salle County's practice of augmenting its public defenders' salaries with reimbursements from bond money. Particularly where appointed counsel must stand mute at the reimbursement hearing, it is incumbent on the court itself to guard against a trampling of an indigent defendant's constitutional protections. The court must resist routine forfeiture proceedings favoring the county or State and conform its reimbursement orders to the evidence.

In sum, we find that no reimbursement for public defender services should have been granted. After properly deducting 10% for bail bond costs, the remaining $1,350 should have been refunded to Crawford. See 725 ILCS 5/110—7(f) (West 1992).

For the reasons stated, we reverse the judgment of the circuit court of La Salle County and vacate the order of reimbursement. The circuit clerk of La Salle County is directed to refund 90% of the posted bond to Ronald Crawford or his designee pursuant to the views expressed herein.

Reversed; order vacated.

SLATER and LYTTON, JJ., concur.